12 N.J. Super. 192 (1951)
79 A.2d 326
BIRKFIELD REALTY CO., A CORPORATION, PLAINTIFF-APPELLANT,
v.
BOARD OF COMMISSIONERS OF THE CITY OF ORANGE, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 19, 1951.
Decided March 6, 1951.
*194 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Milton M. Unger argued the case for appellant (Messrs. Milton M. and Adrian M. Unger, attorneys).
Mr. Edmond J. Dwyer argued the cause for respondents.
The opinion of the court was delivered by WILLIAM J. BRENNAN, JR., J.A.D.
Plaintiff seeks a declaration that the application of the zoning ordinance of the *195 City of Orange to plaintiff's property at 395 South Center Street is unreasonable, arbitrary and capricious and that the ordinance is unconstitutional insofar as it affects such property.
South Center Street, a cross-town artery, runs north and south. Plaintiff's tract is on the west side of the street, two and one-half blocks south of Central Avenue, a main thorough-fare running east and west.
The frontages on Central Avenue east and west of South Center Street are classified in the business zone.
The lands south of Central Avenue on both sides of South Center Street to the Village of South Orange line, about three-fourths of a mile, were originally classified in the single-family Residence A zone which extends west from South Center Street one-third to one-half mile to the east side of Lincoln Avenue.
The zoning ordinance was enacted in 1922. The governing body amended the ordinance from time to time to change certain lots along South Center Street, all located within a short distance south of Central Avenue, from Residence A to Residence C zone to permit the erection of apartment and garden-type apartment multi-family structures. Two of these locations, also on the west side of South Center Street, are between plaintiff's tract and Central Avenue. One is within a half block of Central Avenue and the amendatory ordinance affecting it was enacted in 1928. The other is at 341-361 South Center Street, only 300 feet north of plaintiff's tract, and is a garden type authorized by an amending ordinance adopted on October 21, 1947.
On the east side of South Center Street the frontages for two blocks south of Central Avenue have been reclassified Residence C, most recently by an amending ordinance adopted in 1940 under which apartments were constructed directly opposite the garden-type apartment at 341-361 South Center Street. Another, and the last, amending ordinance affecting the east side of the street was adopted in 1945 as to 468-512 South Center Street, about a block south of plaintiff's tract, and a garden-type apartment has been erected thereon.
*196 The gist of plaintiff's argument is that these several changes have effectively destroyed the zoning ordinance as a comprehensive plan, at least so as to make its application to plaintiff's property to restrict the use of that property to single-family residences, unreasonable, arbitrary and capricious. On that ground plaintiff applied on March 20, 1950, to the governing body of the city and sought the enactment of an amendatory ordinance to classify plaintiff's property in a Residence C zone to permit the erection thereon of garden-type apartments. The application was denied. Plaintiff thereupon brought this suit. The Law Division, Essex County, after trial, dismissed the complaint and this appeal is from the judgment of that Division entered July 17, 1950.
The governing body's resolution of April 18, 1950, denying plaintiff's application enumerates several reasons, among which, and particularly relied on by the city as completely supporting the denial, are that "to grant the proposed zoning change for applicant would be in violation of the zoning program and plan heretofore adopted in the City of Orange," and "the Master Plan of the City of Orange specifically sets forth that the land area both surrounding and including lands of Birkfield Realty Co. is residential property confined to single one family residences only, as defined in the Zoning Ordinance of the City of Orange."
The "zoning program," "plan" and "Master Plan" referred to is the zoning phase of the master plan for the future physical development of the city being developed on the authority of R.S. 40:55-6 by the Orange Planning Board created by a 1934 ordinance. That phase of the master plan was completed and promulgated by the planning board in December, 1947, and was adopted by the governing body. The planning board's recommended program for this neighborhood is the rezoning as a Residence C district of the frontages not already so classified on the easterly side of South Center Street lying between Central Avenue and the southerly boundary line of 468-512 South Center Street, and also the frontages on the west side not already so classified to the southerly boundary line of 341-361 South Center Street; but all remaining front-ages, *197 including plaintiff's land, on both sides of South Center Street to the South Orange line are proposed to be retained in the Residence A single-family zone. The necessary revision of the zoning ordinance to accomplish the change to Residence C in respect of the tracts to be affected is awaiting the general revision of the ordinance which, according to the planning board's report, "is one of the most urgent needs of the city. It is not a simple procedure and will require a considerable amount of work."
In the circumstances we are not persuaded that plaintiff has successfully overcome the presumption that the zoning ordinance is altogether reasonable in its application to plaintiff's tract. Brandon v. Montclair, 124 N.J.L. 135 (Sup. Ct. 1940); affirmed, 125 N.J.L. 367 (E. & A. 1940); Guaclides v. Borough of Englewood Cliffs, 11 N.J. Super. 405 (App. Div. 1951). The refusal by the governing body to permit still another encroachment to do violence to the existing zoning ordinance will not be viewed as arbitrary or capricious when, as here, grounded in a determination to adhere to and to further an approved and adopted zoning program essential to the larger plan for the physical development of the municipality and plainly designed and reasonably adapted to conserve and promote the public health, safety, morals and general welfare of the city. Cf. Mansfield & Swett, Inc., v. West Orange, 120 N.J.L. 145 (Sup. Ct. 1938). "Municipal planning, in a word, is the accommodation, through unity in construction, of the variant interests seeking expression in the local physical life to the interest of the community as a social unit. Planning is a science and an art concerned with land economics and land policies in terms of social and economic betterment. The control essential to planning is exercised through government ownership or regulation of the use of the locus." Grosso v. Board of Adjustment of Millburn Twp., 137 N.J.L. 630 (Sup. Ct. 1948).
The attainment of planning objectives cannot be achieved overnight, particularly in a long-settled community like Orange, founded in 1664, where the immediate effort *198 must be in large part a struggle to preserve "such beneficial features as may have survived the period of spontaneous and uncontrolled growth" of the city. Duffcon Concrete Products, Inc., v. Borough of Cresskill, 1 N.J. 509 (1949). The regulatory power has, of course, its limits, see Mansfield & Swett, Inc., v. West Orange, supra. We do not find that they have been over-reached in this case. The Legislature has expressly declared that proposed amendments to zoning ordinances shall first be submitted to the planning board, where it exists, for approval, disapproval or suggestions, and that that board shall have a reasonable time, not less than 30 days, for consideration and report, and in the event of an unfavorable report by the planning board, the amendments shall not become effective except by a favorable vote of two-thirds of the governing body. Laws 1948, c. 305, p. 1222, section 4, amending R.S. 40:55-35. The legislative intent plainly accords important, although, of course, not decisive, weight to the recommendations of the planning board concerning zoning ordinance amendments when based upon legitimate considerations of public interest and such reasonable supervision and regulation as may be essential for the common good and welfare.
The total area of the City of Orange is only two and two-tenths square miles. About one-half, or a little more, of that area lies north of Central Avenue. That half is a striking example of the baneful consequences of planless growth and haphazard development. Orange is predominantly a residential community. Nevertheless, the north half of the city has only four small and widely separated sections presently zoned for single-family dwellings. It is zoned almost completely for business, industrial, two-family and multi-family uses.
South of Central Avenue, on the other hand, the south half of the city is not only almost entirely zoned for single-family residences but is presently built up almost entirely with single-family homes. The exceptions are confined to three sides of its perimeter (the fourth side is the South Orange line), back of the west side of the full length of Lincoln Avenue on the west, where apartments, commercial and industrial structures and two-family houses have been allowed, and along the Central *199 Avenue frontage and the mentioned multi-family structures on South Center Street within a short distance south of Central Avenue. The section of approximately one-quarter square mile in area within that perimeter is one of the attractive single-family residential "oases" of Essex County. Many of the homes were built decades ago, but a large number have been built since the end of World War II. Considerable building activity of new one-family homes is now going on in several parts of the section, notably in the immediate vicinity of plaintiff's tract, indeed just to its rear which abuts on lots facing on a new street, Adrianne Court, upon which several substantial homes are being erected.
The planning board from its study of the community concluded that "in a city such as Orange, where there exists little vacant land, where the population growth has remained on the decline, it is most important to protect those areas and investments that are good, while encouraging new constructions in those areas in need of rejuvenation." Consistent with that general policy, which can hardly be characterized as unreasonable or arbitrary, the board adopted a subordinate policy applicable specially to the quarter-square mile section, which includes plaintiff's tract, namely,
"It will be the policy of the Planning Board to preserve the one family zone bordered by the South Orange line, Lincoln Avenue, Lighthipe Place, the rear lines of properties on the south side of Reynolds Terrace, and Center Street to the South Orange line. It may also be stated that despite repeated requests the Board contemplates no zoning variance at this time for land located on the west side of Center Street, between Highland Avenue and Fuller Terrace based upon the character of fine homes still standing in this area."
Plaintiff's tract is "on the west side of Center Street between Highland Avenue and Fuller Terrace." Lighthipe Place and "the rear line of properties on the south side of Reynolds Terrace" (which latter line includes the southerly boundary line of the garden apartments at 341-361 South Center Street) form a line starting a few hundred feet north of plaintiff's tract, which line roughly parallels Central Avenue *200 and extends from South Center Street on the east about one-third mile to Lincoln Avenue on the west.
A large measure of discretion is necessarily vested in the governing body to determine the effect upon the general public interest and welfare of the exercise of its authority under R.S. 40:55-35 to amend the zoning ordinance as desired by the plaintiff. An exception in favor of plaintiff's lands might reasonably be considered by the governing body to be a threat to the whole carefully developed zoning program which is the first essential and an integral part of the master plan for the future development of the city. In the circumstances, whatever might be the merit in plaintiff's allegations, but for the existence of that approved program, certainly the fact that the ordinance had been amended in the several instances mentioned before the adoption of the program does not make the refusal to do so in this instance arbitrary and capricious. O'Connor v. Mayor and Council of North Arlington, 1 N.J. Super. 638 (Law Div. 1949). "If that were so, one variation would sustain if it did not compel others, and thus the general regulation would eventually be nullified." Scaduto v. Bloomfield, 127 N.J.L. 1 (Sup. Ct. 1941). That refusal escapes the taint of unreasonable and capricious action when grounded as it was upon the governing body's determination, adopted upon the planning board's recommendation, to adhere to the comprehensive zoning program which called a halt to further encroachment in the single-family zone and affects plaintiff's tract in common with all others in the quarter square mile area which is the core of that zone. There is no reason to doubt that the general revision of the zoning ordinance necessary to implement the whole program will be enacted in due time. The delineation of the boundaries of the multi-family zone along South Center Street is desirable if not essential in the general interest as well as the interest of owners and prospective purchasers of lands to be affected by the change and not presently zoned for multi-family structures.
Plaintiff argues finally that "the only reason for the denial of plaintiff's application in this case is the objections of some *201 of the neighbors." The city commission held a public hearing on plaintiff's application and heard the protests of property owners in the immediate neighborhood and received some protest petitions. The commissioner who moved that the application be rejected gave the objections received as a reason for his motion. The formal resolution adopted two weeks later, however, grounded the commission's action on the deviation from the master plan entailed in favorable action as well as upon consideration of the effect of the structure upon immediately adjacent single-family properties and a finding that the structure in that location would increase traffic congestion and cause a hazardous condition on South Center Street. See R.S. 40:55-32.
It is true that the advantage or detriment to neighboring land owners may not be the sole criterion which guides governing bodies in zoning matters. Mansfield & Swett, Inc., v. West Orange, supra; Pfister v. Clifton, 133 N.J.L. 148, 152 (Sup. Ct. 1945); Ridgefield Terrace Realty Co. v. Ridgefield, 136 N.J.L. 311, 313 (Sup. Ct. 1947). We are satisfied, however, that the city commission did not deny plaintiff's application because it viewed the desires of the neighboring property owners as determinative, but rather primarily because the granting of the application would be an unwarranted departure from the approved comprehensive zoning plan. Cf. Crow v. Town of Westfield, 136 N.J.L. 363 (Sup. Ct. 1948).
Affirmed.