RONALD R. LEIMANN, PLAINTIFF-APPELLANT, v. BOARD OF ADJUSTMENT OF THE TOWNSHIP OF CRANFORD, UNION COUNTY, NEW JERSEY; NICHOLAS TOMA-SULO, ELIZABETH TOMASULO, JOSEPH P. TOMASULO AND GRACE TOMASULO, DEFENDANTS-RESPONDENTS.

Argued March 24, 1952—Decided May 5, 1952

*Mr. Ira D. Dorian* argued the cause for appellant.

*Mr. Ellsworth J. Sterner* argued the cause for respondents.

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. Determining that "by reason of the exceptional and peculiar shape of the premises and by reason of non-access to the rear of said premises," the strict application of the municipal zoning ordinance would result in undue hardship upon defendant owners, the Board of Adjustment of the Township of Cranford granted a variance permitting the construction of a garden-type apartment project of eight buildings with 140 residential units upon 9½ acres of unimproved land in a district classified as Residence A limited to single-family dwellings. Plaintiff, a neighboring property owner, brought this action in lieu of prerogative writ to set aside the variance as not within the authority conferred upon local boards by subdivision (*c*) of *R. S.* 40:55–39 as amended (*L.* 1948, *c.* 305, *p.* 1223; *L.* 1949, *c.* 242, *p.*

779). The Law Division sustained the local board. Plaintiff's appeal to the Appellate Division from the ensuing judgment was certified by this court of its own motion.

Defendant owners acquired the property in two parcels. The first parcel, $3\frac{1}{2}$ acres with a frontage of approximately 423 feet on the north side of Lincoln Avenue and having an irregular depth, was purchased in 1944. East of this parcel is the residential property of two of the defendants, at 371 Lincoln Avenue, which has a common boundary with the parcel except that in depth the parcel extends northerly toward the Rahway River for some distance beyond said defendants' rear or north line. The second parcel, six acres, which is generally rectangular in appearance, was bought in 1946 and is east of and joins the first parcel where the latter extends beyond the mentioned rear property line. It has no access to Lincoln Avenue except across the first parcel, being entirely north of said rear line and also of the rear property lines of several of the neighboring residential properties to the east. The two parcels as one piece comprise a considerable portion of an area which lies within the apex of a triangle formed by Lincoln Avenue and the Rahway River as the sides and Centennial Avenue as the base. The assembling of the parcels results in an irregularly shaped piece of property which was considered by the local board as exceptional and as satisfying the statutory requisite of an exceptional shape entitling the owners to the variance granted.

After acquiring the two parcels the defendant owners deeded a strip along the west and north borders to the township and to the Union County Park Commission, starting at Lincoln Avenue and curving along the rear lines of both parcels. Defendants claim that the township and the park commission agreed to construct a street thereon to connect with a street to be constructed along the river to provide a throughway from Lincoln Avenue to South Avenue and to give access to the two parcels from the rear. The public bodies have not constructed the street and the local board concluded that the owners are now denied access to their

property and that this state of facts constitutes an excep-
tional situation or condition of the property also warranting
the variance granted.

There was evidence of several nonconforming uses in the
area, including some apartment structures nearby.. However,
the owners did not attack the reasonableness of the zoning
ordinance in its application to their property. *Cf. Birkfield
Realty Co. v. Board of Com'rs. of City of Orange*, 12 *N. J.
Super.* 192 (*App. Div.* 1951), certif. den. 8 *N. J.* 319 (1951).
They chose to seek a variance from its strict application after
unsuccessfully applying to the governing body of the Town-
ship for a permit to construct their proposed project.

 It is basic to the fundamental purpose of zoning
that the power of a local board under subdivision (*c*) of *R. S.*
40:55–39 to grant variances should be exercised sparingly
and only in exceptional circumstances, and ordinarily only
when relief can be granted "without substantial detriment
to the public good and will not substantially impair the
intent and purpose of the zone plan and zoning ordinance,"
provided always the proofs reasonably establish that strict
application of the zoning ordinance results in an unnecessary
and unjust interference with the rights of private property in
the light of a situation peculiar to the particular property
among properties generally of the district. *Lumund v. Board
of Adjustment of Rutherford*, 4 *N. J.* 577 (1950); *Proto-
mastro v. Board of Adjustment of City of Hoboken*, 3 *N. J.*
494 (1950); *Brandon v. Montclair*, 124 *N. J. L.* 135 (*Sup.
Ct.* 1940), affirmed 125 *N. J. L.* 367 (*E. & A.* 1940). The
power must be exercised consonant with the duty laid upon
the local board to protect the integrity of the general scheme
from substantial impairment. A grant of variance which
has the effect of frustrating the general scheme and is tanta-
mount to an usurpation of the legislative power reserved to
the governing body of the municipality to amend or revise
the plan (*R. S.* 40:55–35 as amended by *L.* 1948, *c.* 305, *p.*
1222) cannot be sustained. *Brandon v. Montclair, supra.*
Subdivision (*c*) confines the permissible exercise of the power

to the allowance of relief in favor of the owner of a specific piece of property where by reason of exceptional narrowness, shallowness or shape at the time of the enactment of the regulation, or by reason of exceptional topographic conditions or other extraordinary and exceptional situation or condition of such piece of property, the strict application of the regulation would result in undue hardship upon the owner, and relief can be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the regulation. 165 *Augusta Street, Inc., v. Board of Adjustment of the Town of Irvington,* 9 *N. J.* 259 (1952).

The instant variance is wholly lacking in a reasonable basis and was plainly beyond the local board's power to grant. We consider it significant that the determination contains no express finding that the relief could be granted without substantial detriment to the public good and without substantial impairment of the intent and purpose of the zone plan. Subdivision (*c*) cannot be interpreted to contemplate that a 9½-acre tract may be considered "a specific piece of property" subject to the power of the local board to authorize a variance when, so far as appears, development of the zone has not been of single-family dwellings upon large tracts, or even partly so, but has emphasized the construction of such dwellings upon moderate sized lots. Determination of whether a given piece of property is "a specific piece of property" within the meaning of the statute properly the subject of consideration for a variance should take into account its size in relation to the sizes generally of pieces of property in the zone devoted to the permitted use. We regard such an interpretation of subdivision (*c*) as required by the statutory policy to control and limit variances within narrow limits in keeping with the spirit, intent and general purpose of zoning to divide communities into appropriate districts according to the suitability of each for particular uses and to ordain uniformity of use within each district. The variance in the circumstances here has the effect not simply of substantially

impairing the intent and purpose of the Cranford zoning ordinance; the grant for so large an area as 9½ acres in a district where single-family dwellings are built usually on moderate sized lots virtually shatters, if indeed it does not wholly nullify, the general scheme of the zone.

Moreover, viewing the tract in the setting of its environment, the proofs are entirely insufficient to support the finding of unnecessary hardship to the owners upon the ground of its exceptional shape. Mere irregularity in contour is not the test. . The statute contemplates proof that the property because of its shape cannot reasonably be put to the permitted use in the manner of properties generally in the district. Certainly it may not be said that the 3½-acre parcel with its frontage of 423 feet on Lincoln Avenue cannot be subdivided into lots of sizes comparable to the sizes of lots generally in the district. Nor was the six acre tract shown to be any less suitable for single-family residences upon like-sized lots except as access to it has been made difficult because the proposed street has not been constructed. There was testimony that the owners have been unsuccessful "on many occasions" in their efforts "to convey, or sell the property" for single-family residences "by reason of the peculiar set up of the property." The set-up, however, is of the owners' own making. This is the case both as to the resultant irregular shape of the whole produced by the assembling of the two parcels, and as to the difficulty of access to the rear consequent upon the deeding of the border strip and the failure of the authorities to construct the road. When the condition said to require a variance is of his own making, an owner is generally denied relief. See *Protomastro v. Board of Adjustment of City of Hoboken, supra; Peterson v. Board of Adjustment of Montclair, 7 N. J. Super.* 282 (*App. Div.* 1950). Futhermore, except as the shape of a specific piece of property existed "at the time of enactment of the regulation," its shape is not a basis for a finding that the use restriction results in peculiar and exceptional practical difficulty to, or exceptional and undue hardship upon, the

owner. Here the inference from the proofs is clear that the assembling of the parcels resulting in the purported exceptional shape of the subject property was effected after the enactment of the zoning ordinance. The 3½-acre parcel was purchased from Cranford Trust Company in 1944. In 1943 the trust company sought a variance to permit construction of a garden type apartment upon the parcel. One of the defendants vigorously opposed the application upon the ground, among others, that the contemplated project would depreciate the property values in the neighborhood, and the application was denied.

■ Nor is the owners' difficulty of access to the rear of the property, created by their conveyance of the border strip and by the failure of the public authorities to construct the road, sufficient basis to support the variance as being rested upon "other extraordinary and exceptional situation or condition of such piece of property." The arrangement for the road was made in contemplation of the development of the land. If development for single-family dwellings is not feasible without the road, the owners may pursue their remedy upon the alleged agreement to obtain its performance. Plainly a situation or condition is not to be deemed extraordinary and exceptional within the statutory intendment when the owners who brought it about have the means of correcting it.

The judgment of the Law Division is reversed and the case is remanded with direction to enter a judgment setting aside the action of the Board of Adjustment of the Township of Cranford.

OLIPHANT, J. (dissenting). This is an appeal from a judgment in an action in lieu of a prerogative writ which judgment affirmed the granting of a variance under R. S. 40:55–39 (c) by the Board of Adjustment of the Township of Cranford.

There is a presumption that the power and discretion of a board of adjustment has been properly exercised, and we have held that this court will not exercise its original juris-

diction in such matters in the absence of clear proof that such action is arbitrary or capricious to the extent that an abuse of discretion is spelled out. *Lynch v. Hillsdale,* 136 *N. J. L.* 129, 133 *(Sup. Ct.* 1947), affirmed 137 *N. J. L.* 280 *(E. & A.* 1948); *Oliva v. Garfield,* 1 *N. J.* 184 (1948); *Monmouth Lumber Co. v. Ocean,* 9 *N. J.* 64, 76 (1952).

It is only where there is no competent proof of unnecessary hardship or where the board bases its action upon an unauthorized standard for determining "unnecessary hardship" and acts beyond its statutory sphere of action, that an appellate court should apply the necessary corrective. *Ramsbotham v. Board of Public Works,* 2 *N. J.* 131 (1949); *Stolz v. Ellenstein,* 7 *N. J.* 291 (1951).

While the applicant has the burden of proof to establish unnecessary hardship to justify a variance by the board of adjustment, *Home Builders Ass'n. v. Paramus,* 7 *N. J.* 335 (1951), on review or appeal the appellant has the burden of establishing that the action of the board of adjustment is arbitrary and capricious.

In this case the record is meager and possibly deceptive. Neither the zoning ordinance nor the map is before the court. We have what is referred to as a "blown up" copy of the tax map for the locality which gives meager evidence of the irregularity of the plot, but we have no proof whatsoever as to grades or the topography of the land, especially since part of the area is bounded by a branch of the Rahway River. The topography of the land could have been a vital factor in the decision of the board. Likewise nothing appears as to the size of the buildings or other structures used in the commercial enterprise of the Cranford Convalescent Home which is adjacent to the tract in question. This could have a militating effect on the use of this property for residences in a Class A residential zone. These factors added to those testified to by the real estate expert of the respondent make out a plausible case for the applicant.

The majority opinion apparently concedes all of these facts but bases its conclusions upon two or three legal premises

which it deduces from the applicable statutory provision. The first is that the respondent has made no attack on the reasonableness of the ordinance. I do not think that such a question has to be raised in an application for a variance and that it could not be decisive on the question of the granting of a variance on the ground of undue hardship. The test of whether a zoning ordinance is reasonable depends upon its application to all of the property in an entire township, not to its impact upon a particular piece of property. And it is for this reason that there is carefully provided in the zoning statute sections permitting variances for the various reasons set up in *R. S.* 40:55–39.

It could very well be that the respondent may be able to prove in a direct proceeding that due to the large number of substantial variances, granted and existing on contiguous and adjacent properties in the immediate area, that the denial of his application would amount to a denial to him of due process and the equal protection of the law, but he does not have to go that far in order to justify a variance under the section in question.

The second proposition advanced by the majority is that the board of adjustment is required by *R. S.* 40:55–39 to make an *express finding* that the relief "can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance." I find no such explicit direction in the statute and where, as here, the proofs are such that they indicate there was no substantial detriment to the zone plan, zoning ordinance or the health, morals and safety of the general public in the township, then the omission of such an express finding does not and should not render the finding of the board void. Additional inconvenience which might possibly disturb the even tenor of the present use of adjacent or contiguous properties resulting from the fact that additional neighbors may enter the area is not the substantial detriment the statute intends.

The third premise upon which the majority opinion rests is that the phrase "specific property" as used in the statute limits the power of the board of adjustment in granting a variance "to the sizes generally of pieces of property in the zone devoted to the permitted use." By so interpreting this phrase the majority are reading into the statute an important limitation which is not there even by inference.

Zoning ordinances ordinarily speak prospectively and their greatest impact is felt upon undeveloped lands. An owner is entitled to use his land to its best and highest use subject to reasonable zoning requirements and the size of his property is relatively unimportant because an owner with 9½ acres of rocky hillside or gully is entitled to entirely different treatment under a zoning plan or ordinance, than the owner of 9½ acres of flat level land. The topography and physical aspects of the land are of vital and decisive force not only on the question of zoning but on the question of a variance to be granted under the zoning act. The mere observation of property lines and acreage on a plat map or zoning map merely leads to abstract deductions as a matter of plane geometry in determining the extent of the irregularity of the linear dimensions. Zoning involves considerably more than that, and while it may very well be that a zoning ordinance may limit the size of lots and regulate the size of buildings on lots so subdivided, yet there is nothing before this court that indicates that is the situation in this case.

The danger in this broad pronouncement in the majority opinion is that it will give a distinct advantage to the developers of choice tracts of land who have already subdivided their acreage in a manner most advantageous to them which subdivision, if binding, as the majority intimates, on the owners of adjacent tracts would prevent the owner of hilly or rocky lands or lands cut through by gullies and gorges to make the best possible use of his acreage.

I do not think that in the absence of proof in this case that the size of the lots were fixed by the zoning ordinance, that the pronouncement on this point by the majority is relevant

and necessary. The case is a close case on its facts but I feel the weight of the present proofs sustain the granting of the variance by the board and that the appellant has failed to make out a case of arbitrary action. I would affirm.

Mr. Justice BURLING authorizes me to state that he concurs in this dissent.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, JACOBS and BRENNAN—5.

*For affirmance*—Justices OLIPHANT and BURLING—2.