COBBLE CLOSE FARM, A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT, v. BOARD OF ADJUSTMENT OF THE TOWNSHIP OF MIDDLETOWN, AND DAVID SIMPSON, BUILDING INSPECTOR OF THE TOWNSHIP OF MIDDLETOWN, DEFENDANTS-RESPONDENTS.

Argued September 30, 1952—Decided November 3, 1952.

446

Mr. *John Warren* argued the cause for appellant.

Mr. *Leon Reussille, Jr.* argued the cause for respondents (*Messrs. Applegate, Foster, Reussille & Cornwell,* attorneys).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. This is a zoning case. We certified of our own motion the appeal of plaintiff to the Appellate Division from the judgment entered in the Law Division against the plaintiff corporation and in favor of the defendants, Board of Adjustment of the Township of Middletown and David Simpson, Building Inspector of said Township.

Herbert N. Straus and Therese Kuhn Straus, his wife, for many years maintained a country estate of 70 acres in Middletown Township with acreage on both sides of Cooper Road, the mansion house being on the larger part north of the road. On the 23-acre parcel south of the road Mr. and Mrs. Straus built a group of accessory buildings—a dairy, cow barns, stables, machinery shops, manure barn, a large garage, living quarters for bachelor workmen of the estate, and a cottage containing the workmen's dining room and commodious living quarters for other persons in their employ. All of the buildings except the manure barn, the garage and the cottage are grouped in the form of a square around a cobbled court. The garage is close by the group. The cottage stands apart from the group across an artificial pond and is connected to the group by an arched stone colonnade running along the pond. The manure barn is a distance removed from the group. The buildings are of expensive construction, "elaborate," with cast stone walls, tile roofs and floors, mullioned windows, oak panelling, "an architectural showplace," "a thing of beauty." The evidence discloses that the replacement cost of the buildings would

approximate $417,000 and that their present sound value after allowance for depreciation is about $292,000.

After Mr. Straus' death the mansion house and the acreage on the north side of Cooper Road were sold. Later, on December 6, 1949, plaintiff's president and his wife acquired at public auction the 23-acre parcel with the accessory buildings for the sum of $28,000, taking title on March 6, 1950 in the name of plaintiff corporation which they organized as their nominee for the purpose. The president and his wife took up residence in the cottage. Plaintiff corporation has invested an additional $20,000 in improvements, but whether to the cottage alone or to the buildings generally does not appear.

The instant controversy grows out of plaintiff's desire to convert the manure barn into a one-family dwelling and the group of buildings around the cobbled court into eight one-family residences. The trial court found that the plans for the eight residences would result in "multiple family units having a common roof, common walls and a common heating plant." The plan is not for residences on separate lots. No subdivision of the 23-acre parcel was made. The plan proposes that a dairy building and a portion of a cow barn connected with it would make up one residence; the remaining portion of that cow barn, all of another cow barn and a two-story feed barn would make the second; the horse barn and a portion of the machinery barn would provide the third; another portion of the machinery barn would supply the fourth, and still another portion of the same machinery barn would provide the fifth; and that the building formerly used as quarters for bachelor employees, which is under one roof, would make up into three residences. The township zoning ordinance expressly forbids multi-family units, and it is plain that a consummation of plaintiff's plan would violate that regulation.

The defendant building inspector denied plaintiff a building permit for the proposed alterations because the structures as so altered would not comply with the requirements

of the zoning ordinance. Plaintiff appealed to the board of adjustment and also applied to that board for a variance from the provisions of the ordinance. The board sustained the action of the building inspector and denied the variance. The judgment entered in the Law Division sustained the board of adjustment as to both determinations.

The conveyance to plaintiff was made expressly subject to the township's zoning ordinance. The ordinance was originally adopted in 1935 and was substantially amended and revised in 1949, about two months before the auction sale.

Middletown is a sprawling community of great area and is predominantly residential. All but a small portion of the township is zoned for residential purposes. There are five residence districts, A to E, inclusive. The provisions applicable to structures in Zone A, wherein plaintiff's property is located, are designed to make that zone "the highest type zone in the township," and it is primarily a district of substantial homes on sizeable plots. The zone is in the southeast section of the township, running along the Navesink River for some two and one half miles and extending back from the river up to a mile in some places. Cooper Road runs east and west, paralleling the river, and bisects the westerly half of Zone A.

The zoning ordinance provides that no building in the zone may be "erected, altered or used" (1) on a plot of land containing an area less than one acre; (2) and having a frontage of less than 150 feet "on the road or street"; (3) all buildings must be set back at least 75 feet from the "curb line" and if no "curb line" from the "street line," and not less than 15 feet from any rear "lot" line and not less than 15 feet from any side "lot" line; (4) the ground floor of the building may not contain less than 1,500 square feet; (5) other than barns, stables, garages and greenhouses accessory to the residence on a "lot" no structure may be used for any purpose "other than for a one family dwelling for strictly residential purposes"; (6) not more than one dwelling shall be constructed on one "lot" except that living

quarters may be provided in accessory structures for persons "employed in domestic service upon the premises."

The residents of Zone A take a live interest in the maintenance of the zoning standards and the preservation of the character of the district. There are two community organizations, Blossom Cove Road Association and Riverside Drive Protective Association, which took an active part in the proceedings below in opposition to the relief sought by plaintiff from the board of adjustment.

Plaintiff argues first that the ordinance has no application to its property. The contention is that the interconnected structures surrounding the cobbled court are buildings "fronting on a private court 500 feet from the public road" and that the manure barn is a structure on "plaintiff's right of way," and that "neither they nor the proposed dwellings are erected on 'lots' and do not front upon any 'street' or 'road' and there is no 'curb line,' 'street line' or 'lot line' from which setbacks may be measured," and therefore that the buildings are not within the prohibition of the ordinance against the erection, alteration or use of buildings on a "plot of land containing an area less than one acre and having a frontage of less than 150 feet on the road or street." We find no merit in this argument. The "lot" of land within the meaning given that word by the ordinance is plaintiff's parcel of 23 acres. The ordinance expressly defines a "lot" as "a parcel of land, the location, dimensions and boundaries of which are determined by the latest official record * * *." The frontage, setback and side line requirements are thus to be measured from the boundaries of the 23-acre parcel.

And because the 23-acre parcel is a "lot" under the ordinance, the prohibition against more than one dwelling on a "lot" except for accessory living quarters for persons in domestic service on the premises precludes plaintiff's alteration of any of the structures for the residential uses proposed while the cottage is maintained as a residence and the parcel remains undivided. It is urged that the cottage

is not a "main residence" within the meaning of the ordinance because it was not such but in accessory use to the Straus mansion when the 23-acre parcel was part of the larger estate. This argument is plainly specious. Upon the separation of plaintiff's parcel from the larger tract, and the use of the cottage as a residence, the cottage became the "main building on the same lot" in contemplation of the ordinance and the other buildings "subordinate and accessory to the main building on the same lot."

Plaintiff next argues that if the ordinance is applicable to its buildings, to require it to comply therewith results in an arbitrary and capricious interference with its right of enjoyment and use of the property, compelling an adjudication either that the ordinance is invalid as applied to plaintiff's property or that the local board of adjustment should have granted plaintiff a variance from the terms of the ordinance upon grounds of undue hardship pursuant to *R. S.* 40:55–39(*c*), as amended. In view of this court's decision in *Lionshead Lake, Inc., v. Township of Wayne,* 10 *N. J.* 165 (1952), plaintiff abandoned at the oral argument the contention made on its brief that the minimum ground floor area limitation, considered with the plot area and setback requirements, was invalid as an attempt to control the minimum cost of homes and as having no relation to zoning purposes.

Plaintiff is met with the presumption that the zoning ordinance is altogether reasonable in its application to the property and the burden was upon it to establish the contrary. *Birkfield Realty Co. v. Board of Com'rs of Orange,* 12 *N. J. Super.* 192 (*App. Div.* 1951), certif. den. 8 *N. J.* 319 (1951). We are not persuaded that plaintiff successfully overcame the presumption. The gist of the argument is that the application of the ordinance would "make the buildings unusable for any purpose and they would continue to deteriorate from disuse until, eventually, they would have to be destroyed and an architectural show place would be lost to the Township," a result allegedly "not permissible

in view of the purpose of the statute, *R. S.* 40:55–32, to conserve the value of the property, and of the zoning ordinance to conserve the value of buildings."

But it is not the fact that the "buildings are unusable for any purpose" allowed by the ordinance. They may still be used for the purposes for which they were originally designed, even though they are doubtless more elaborate in construction and equipment than would normally be necessary in accessory use to the cottage as the main residence on the property. The ordinance expressly authorizes the use of the buildings as a "stable, garage, playhouse, barn, greenhouse or building used for living quarters for help, which is subordinate and accessory to a main building on the same lot." In addition, "farm purposes" and the keeping of farm animals are permitted uses on a tract of this size, and plainly the buildings are adaptable to such uses. Significantly, plaintiff was formed, among other purposes, "to operate farms, to raise and sell the products thereof, and to purchase, raise and sell domestic animals."

Thus, as the buildings may reasonably be devoted to uses permitted by the zoning ordinance there is no basis for the claim that a requirement upon plaintiff to confine the uses of the structures to permissible uses makes the ordinance arbitrary and capricious in its application to plaintiff's property. *Rexon v. Board of Adjustment of Haddonfield,* 10 *N. J.* 1 (1952). That the buildings are of picturesque and unique architectural design and of expensive construction may make them particularly adaptable for more profitable non-permitted uses, namely, for conversion to residences, but a zoning ordinance does not contravene constitutional limitations merely because permissive uses thereunder may not be the most profitable uses to which the buildings can be devoted. *Berdan v. City of Paterson,* 1 *N. J.* 199 (1948). Zoning regulations are not to be formulated or applied (as plaintiff argues is required by *R. S.* 40:55–32), with a design to encourage the most appropriate use of *plaintiff's property* but rather "with reasonable con-

sideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view of conserving the value of property and encouraging the most appropriate use of land *throughout such municipality."* (Emphasis supplied.) *Collins v. Board of Adjustment of Margate City,* 3 *N. J.* 200 (1949); *Duffcon Concrete Products, Inc., v. Borough of Cresskill,* 1 *N. J.* 509 (1949); *Guaclides v. Englewood Cliffs,* 11 *N. J. Super.* 405 (*App. Div.* 1951).

 Nor did the Law Division fall into error in sustaining the local board's denial of a variance. In the proceeding before the Law Division the board's action was properly considered to be presumptively correct and the plaintiff had the burden to prove otherwise. The trial court rightly found that the board acted reasonably upon the showing made before it and that plaintiff had failed affirmatively to show that the action of the board was unreasonable, arbitrary or capricious. In that circumstance the action of the board was properly sustained. *Rexon v. Board of Adjustment of Haddonfield, supra; Home Builders Assn. of Northern N. J. v. Paramus Borough,* 7 *N. J.* 335 (1951).

*R. S.* 40:55–39(*c*), as amended, confines the permissible exercise by local boards of adjustment of the power to grant variances to the allowance of relief in favor of the owner of a specific piece of property where by reason of exceptional narrowness, shallowness or shape at the time of the enactment of the regulation, or by reason of exceptional topographical conditions or other extraordinary and exceptional situations or conditions of such piece of property the strict application of the regulation would result in undue hardship upon the owner, and relief can be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the regulation. *Leimann v. Board of Adjustment, Cranford Tp.,* 9 *N. J.* 336 (1952). The local board's determination that no ground for relief within these limitations was established by plaintiff was in nowise arbitrary in the circumstances shown. The alleged

hardship is obviously not the result of any peculiarity inherent in the property itself. The situation is the consequence of the acquisition by plaintiff of the portion of the larger Straus estate and the use of the cottage as the main residence, with full knowledge of the limitations of the ordinance in such case upon the uses of the buildings sought to be converted. Mr. and Mrs. Straus could not have done what plaintiff seeks to do and plaintiff is not to have relief from a situation of its own making. Plaintiff's acquisition of the parcel and its president's use of the cottage as the main residence thereon, plaintiff knowing that the ordinance barred the use as residences of any of the other buildings in that circumstance, if not conclusive against the existence of undue hardship, plainly weighs heavily against the claim that hardship actually ensued. *Lumund v. Bd. of Adjustment of the Borough of Rutherford,* 4 *N. J.* 577 (1950); *Home Builders Assn. of Northern N. J. v. Paramus Borough, supra; Slruyk v. Samuel Braen's Sons,* 17 *N. J. Super.* 1 (*App. Div.* 1951), affirmed on opinion below, 9 *N. J.* 294 (1952).

Plaintiff sought to have the local board suggest what other uses than accessory uses would be approved by it. The board refused to deal with anything except the actual state of facts presented by plaintiff's proposal. This was quite proper. It is not the duty of the board, nor of the court, to search out and list the uses which the board could approve by way of variance from the permitted uses. See *Johnston v. Board of Adjustment, Westfield,* 118 *N. J. L.* 298 (*Sup. Ct.* 1937).

Plaintiff next argues that the participation of Mr. J. Marshall Booker, a member of the local board, during some of the proceedings before the board denied plaintiff due process of law. Mr. Booker is president of Blossom Cove Road Association and was present on September 27, 1950 at a meeting of the members of that association which voted to oppose plaintiff's effort to obtain approval of the conversion plans. At the outset of the first hearing before the

board of adjustment on January 20, 1951, plaintiff filed a challenge for Mr. Booker's recusement upon the ground that he had prejudged the case. Plaintiff was not permitted by the board to complete its examination under oath of Mr. Booker in support of the challenge. Mr. Booker sat with the board for the remainder of the hearing on that day and later viewed the premises with other members of the board. The hearing was adjourned for one week until January 27. Before the taking of testimony was resumed Mr. Booker voluntarily withdrew from further participation in the proceedings. He took no part whatever in the deliberations or vote upon the decision. The trial court found no evidence that the decision of the members of the board who did take part therein was in any manner influenced by Mr. Booker. Upon our independent review of the record we reach the same conclusion. This is therefore not a case for the application of the principle that a determination of a *quasi*-judicial body should be set aside when infected with the taint of self-interest of one of the *quasi*-judges. *Cf. Pyatt v. Mayor & Council of Dunellen*, 9 *N. J.* 548 (1952).

The third count of the complaint filed in the Law Division sought a judgment declaring that the provision of the zoning ordinance prohibiting the erection or use of any building in any residential zone for a "hospital, dispensary, asylum, children's home, orphanage, nursery or private school" is invalid and operates to deprive plaintiff of its property without due process of law in violation of the Fourteenth Amendment of the United States Constitution. The Law Division did not deal with this claim for relief in its findings of fact and conclusions of law, other than as may be inferred from its general finding that the ordinance offends no constitutional provisions, state or federal. But plaintiff was not in any event entitled to be heard upon this count of its complaint. The municipality is not a party to the complaint and was not given the opportunity to defend against this attack upon the validity of its ordinance. *R. S.* 2 :26–72, now superseded by *N. J. S.* 2A :16–56; *Rule* 3 :24–2,

as amended; and see *In re Van Syckle,* 118 *N. J. L.* 578 (*E. & A.* 1937).

The judgment of the Law Division is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.