**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4040-18
                A-4456-18

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ROBBY R. WILLIS, a/k/a
ROBERT WILLIS, RANDY
WILLIS, ROBBY WILLIS,

      Defendant-Appellant.

_____

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

MARCUS S. WHITE, a/k/a
MARCUS WHITE, MARCUS
ST. CLAIR WHITE, DOT
MARCUS ST.CLAIR,
MARCUS ROBERTS,

      Defendant-Appellant.

_____

Submitted October 19, 2020 – Decided March 31, 2021

Before Judges Messano and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment Nos. 10-08-0841.

Joseph E. Krakora, Public Defender, attorney for appellant Robby R. Willis (Louis H. Miron, Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, attorney for appellant Marcus White (Andrew R. Burroughs, Designated Counsel, on the brief).

Scott A. Coffina, Burlington County Prosecutor, attorney for respondent State of New Jersey (Alexis R. Agre, Assistant Prosecutor, of counsel and on the briefs).

PER CURIAM

We consolidate these PCR appeals for disposition in a single opinion.  For the reasons set forth below, we affirm.

I.

We incorporate the procedural and factual history from our opinion on both direct appeals in State v. White,  Nos. A-5598-12, A-5611-12 (App. Div. July 26, 2017) (slip op. at 1-2).

Following a joint trial, the jury found defendant Robby Willis guilty of first-degree kidnapping, N.J.S.A. 2C:13-1(b)(1); first-degree robbery, N.J.S.A. 2C:15-1(a)(1); first-degree carjacking, N.J.S.A. 2C:15-2(a)(4); three counts of first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a); and third-degree terroristic threats, N.J.S.A. 2C:12-3(a). The jury found co-defendant Marcus St. Claire White guilty of robbery, carjacking, two counts of felony murder, and unlawful possession of a handgun, but acquitted him of the other counts in the indictment.

After appropriate mergers, the judge sentenced Willis to: life imprisonment, with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, on the felony murder conviction; a consecutive thirty-year term of imprisonment, with a NERA parole ineligibility period on the kidnapping conviction; a consecutive ten-year term of imprisonment, with a five-year period of parole ineligibility pursuant to the Graves Act, N.J.S.A. 2C:43-6(c), on the weapon possession conviction; and a concurrent twenty-year term of imprisonment, with a NERA period of parole ineligibility on the robbery conviction.

A-4040-18

As to White, after appropriate mergers, the judge imposed a life sentence with a NERA period of ineligibility on the felony murder conviction; a concurrent twenty-year term of imprisonment with a NERA period of parole ineligibility on the robbery conviction; and a consecutive ten-year term of imprisonment, with a five-year parole ineligibility period under the Graves Act for the weapon possession conviction.

## II.

On September 2, 2009, police discovered the lifeless body of Lyudmilla Bershteyn in a field in Mansfield Township, a short distance from the New Jersey Turnpike. A witness who was jogging nearby told police he saw the woman staggering in the field before she collapsed; another witness described an SUV entering the road from a nearby wooded area at a high rate of speed. The victim operated a property management company and was last seen earlier in the morning of September 2 after inspecting an apartment in Philadelphia. At the time, she was sitting in her silver 2009 Murano SUV. An autopsy revealed she died from a single contact gunshot wound below her ear.

In the morning of September 3, at approximately 1:30 a.m., Officer Charles Coleman of the Summerton Police Department in South Carolina, stopped a speeding silver Murano with Pennsylvania license plates driven by

4

Lenroy Laurance. Five other people were inside, including both defendants; Willis's cousin, seventeen-year-old Kareem Harrison; White's girlfriend, eighteen-year-old Shaniqua Williams; and Williams's half-sister, sixteen-year-old Bacquea Thomas. Laurance could not produce a driver's license and, upon producing Bershteyn's registration, he told the officer the SUV belonged to his girlfriend's mother. The officer saw the occupants passing around a bag of snacks, grew suspicious and ordered everyone out of the car. A subsequent search of the Murano revealed three handguns, including one hidden inside the snack bag, the victim's debit card and other personal items, a portable navigation unit, an EZ-Pass transponder and a New Jersey Turnpike toll ticket. All six individuals were taken into custody and South Carolina authorities confirmed with Philadelphia police that the owner of the car had been reported missing. Local police and members of the Burlington County Prosecutor's Office who arrived in South Carolina questioned the occupants. Both defendants provided statements that were introduced to the jury in redacted form. Police pieced together events of the days leading up to, and following, the September 2 carjacking of Bershteyn.

Williams, Thomas, and Harrison testified as State's witnesses at trial. Harrison's testimony was critical to the State's case. He provided eyewitness

testimony of Bershteyn's abduction by himself, Laurance and Willis, and her shooting death at Laurance's hand. From the EZ-Pass transponder and navigational device, the State introduced details of the SUV's location at various points and times, which corroborated much of this testimony and placed the car near the murder site at the time of the shooting.

In his statement, White claimed he was not involved in the abduction of the victim but joined the others thereafter and knew she was in the car. He remained in the SUV as Laurance dragged the victim into the field and shot her with Harrison's gun.

Willis denied any involvement at all and said he checked into an employment and training agency the morning of September 2, but claimed he was sent home without any work. He remained home all day until late in the afternoon, when he and the others left for South Carolina. The State called a witness from the employment and training agency who testified the program was closed on September 2. The State introduced a letter, written by Willis to Harrison while both were in jail, in which Willis expressed anger at Harrison's "snitching," and told him to blame everything on Laurance.

Defendants neither testified nor produced any witnesses at trial.

A-4040-18

## III.

The PCR appeals were heard by Judge Gerard H. Breland, who addressed the defendants' claims in separate opinions. We recount Judge Breland's treatment of these claims separately.

## A.

Willis alleged that his trial counsel was ineffective for five reasons: failing to investigate alternative alibi theories; declining the court's offer of a curative instruction on gang affiliation testimony; failing to object to the state's comments in summation; failing to object to the state's comments in its opening statement; and failing to object to the comments of the State and the victim's family at sentencing. Willis also alleged his appellate counsel was ineffective for failing to raise the issue of territorial jurisdiction on appeal.

Willis first argued his trial counsel was ineffective for failing to investigate an alibi he belatedly raised. Willis's alleged he was picked up by the co-defendants at an Applebee's restaurant, and defense counsel should have investigated to find corroborating video evidence. The trial judge found Willis had given a video-recorded statement to police providing a different alibi; he said in the statement he had been picked up at his house, not Applebee's. The two teenage sisters in the car that day, Williams and Thomas, testified that Willis

was already in the car when they got in at Applebee's. The PCR judge concluded that it was reasonable for trial counsel to not investigate Willis's Applebee's claim, given his failure to provide that alibi to the police, the overwhelming evidence at trial disproving the claim, and his failure to raise this defense at trial. The judge found trial counsel's election not to investigate was not ineffective assistance of counsel.

Willis next argued trial counsel was ineffective for refusing the judge's offer of a curative instruction after testimony alluding to the gang affiliation of a co-defendant, Laurence. The PCR judge, after reviewing the trial record, concluded that Willis' trial counsel promptly objected to the testimony and moved for a mistrial. The mistrial motion was denied, and the judge proposed a curative instruction to the jury, which trial counsel refused. The trial judge gave the curative instruction to the jury anyway. The PCR judge expressly found trial counsel's refusal of a curative instruction was consistent with his mistrial motion strategy. The judge concluded that the trial counsel's act of refusing the curative instruction was not ineffective assistance of counsel and "was well within [a] wide range of reasonable professional assistance."

Third, Willis argued his trial counsel was ineffective for failing to object to various comments by the state during both openings and summations. Willis

argued his trial counsel should have objected during openings when the prosecutor described the victim as a hardworking immigrant, and during summation when the State offered several opinions about defense counsel's theory of the case and trial tactics, including: arguing defense counsel attempted to convince the jury to "misapply the law"; told the jury, "you've been consistently urged by the defense to consider issues that are legally totally, totally irrelevant and have no bearing under the law", stated that defense counsel was making "inaccurate representations"; stated the defense was trying to "sell" something to the jury that was "just not the truth"; and finally, argued to the jury that, "this is like a big jigsaw puzzle. [Defense counsel wants] to start pulling pieces of the puzzle to the point that you can't see the picture."

The PCR judge found that all the statements were direct responses to arguments raised by Willis' trial counsel. The judge found mentioning that the victim was a hardworking immigrant was not egregious and did not deprive defendant of a fair trial; and there was little likelihood that the state's comments in its closing would have yielded sustainable objections. The PCR judge also found the State's presentation of a video of Willis' accomplices sitting in a police car during its opening was not egregious and did not deprive defendant of a fair trial when there was subsequent trial testimony that he and his accomplices were

in police cars on August 30, 2009, and on September 3, 2009. The judge concluded that it was a reasonable tactic for defense counsel not to object to the statements, and there was no ineffective assistance of counsel based on these arguments.

Willis' PCR counsel raised an ineffectiveness of trial counsel claim based on the failure to object to certain arguments made by the State and certain statements made by the victim's family at sentencing. The PCR judge dismissed these claims because they were resolved during the direct appeal. We affirmed the sentence on appeal,[1] and the PCR judge concluded that Willis made no showing that the appropriate sentence was affected in any way by these remarks. Willis also raised a PCR claim alleging appellate counsel should have appealed the trial judge's dismissal of defendant's territorial jurisdiction defense. The PCR judge quickly and properly dismissed this claim as "meritless," finding that, in fact, Willis did not raise a territorial jurisdiction claim below, but rather a personal jurisdiction defense.

After dismissing Willis' pro se allegations of ineffective assistance of counsel as "bald assertions," the PCR judge concluded that Willis' had not made a prima facie claim in support of post-conviction relief, State v. Preciose, 129

---

[1] White, slip op. at 29.

N.J. 451, 462 (1992). He found Willis did not make a case for an evidentiary hearing and denied post-conviction relief.

B.

Given the joint trial, there was predictable overlap between White's PCR arguments and those made by Willis. The PCR judge addressed White's claims in a separate and thorough opinion. We will be brief where the arguments on appeal and the findings before the PCR court are identical to Willis'.

White argued ineffective assistance of his trial counsel for failing to object to the State's comments about the victim's background and its use of video showing White sitting in a police car during openings. White also argued in a pro se brief that defense counsel should have objected to the trial judge's curative instruction on the gang affiliation reference during testimony before the jury. In both instances, the PCR judge rejected the claims, finding no ineffective assistance of counsel for the same reasons he expressed in the Willis PCR decision.

White next argued that trial counsel was ineffective because he did not seek an accomplice liability charge. The PCR judge rejected this claim, finding that White had been charged only as a principal in the felony-murder. Further, the PCR judge found that White himself asserted that he was "not involved in

11

the crime at all." The State's theory of the case and White's defense of actual innocence left White's case in a posture where the trial judge was not required to provide an accomplice liability charge.

White then argued that trial counsel was ineffective for failing to object to a read-back of witness testimony that included street gang references. He also argued that appellate counsel was ineffective for failing to appeal the denial of trial counsel's mistrial motion. We resolved this issue on direct appeal, concluding there was no prejudice at trial to Willis or White resulting from the gang affiliation testimony, and that the trial judge gave proper curative instructions.[2] Consequently, the PCR judge found that there was no prejudice to White from the failure to object to the read back or to appeal the denial of the mistrial motion.

As with Willis, the PCR judge concluded White failed to make a prima facie ineffective assistance of counsel case warranting an evidentiary hearing. The judge denied both applications.

Willis makes the following arguments on appeal:

> I. Defendant Was Deprived of His Constitutional Right to the Effective Assistance of Trial Counsel and Appellate Counsel Under the United States Constitution and the New Jersey Constitution.

---

[2] White, slip op. at 12.

A. Trial Counsel Deprived Defendant of a Fair Trial by Failing to Conduct a Full Pre-Trial Investigation and Rendered the Jury's Verdict as Fundamentally Unreliable.

B. Trial Counsel Failed to Represent Defendant Effectively During the Course of the Trial Insofar as Counsel Failed to Accept the Trial Court's Proposal to Provide the Jury with a Curative Charge Concerning the Highly Prejudicial Reference to Gangs During the Testimony of the State's Witness.

C. Trial Counsel Failed to Represent Defendant Effectively During Sentencing Insofar as Counsel Failed to Zealously Advocate for Defendant and Challenge the State's Highly Inflammatory Presentation of Witnesses and Facts.

II. Defendant Was Deprived of His Constitutional Right to the Effective Assistance of Appellate Counsel Because Counsel Failed to Argue the Territorial Jurisdiction Issue Accurately.

III. The PCR Court Abused its Discretion in Not Conducting an Evidentiary Hearing to Address Defendant's Claim.

In his brief, White makes the following arguments on appeal:

I. As Mr. White Has Established, He Was Denied Ineffective Assistance of Trial and Appellate Counsel, the PCR Court Erred When It Denied His Petition for Post-Conviction Relief Without Holding an Evidentiary Hearing.

13

(1) Trial counsel's failure to make a timely objection to the State's opening remarks was prejudicial to his client's interest to receive a fair and reliable trial.

(2) Trial counsel's failure to object to the State playing a video showing Mr. White detained in a police vehicle was prejudicial.

(3) Trial counsel was ineffective for not seeking an accomplice liability charge.

II. Appellate Counsel Was Ineffective for Failing to Raise Certain Cognizable Claims on Direct Appeal.

(1) Appellate counsel failed to argue that the trial court erred by not sua sponte instructing the jury on accomplice liability.

(2) Appellate counsel was ineffective for not appealing the denial of a mistrial and the read-back of testimony concerning gang affiliation.

III. As There Were Genuine Issues of Material Facts in Dispute, an Evidentiary Hearing Was Required.

IV.

When petitioning for PCR, a defendant must establish he is entitled to "PCR by a preponderance of the evidence." State v. O'Donnell, 435 N.J. Super. 351, 370 (App. Div. 2014) (quoting Preciose, 129 N.J. at 459). We analyze ineffective assistance of counsel claims by using the two-prong test established

by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 694 (1984). <u>See</u> <u>Preciose</u>, 129 N.J. at 463; <u>see also</u> <u>State v. Fritz</u>, 105 N.J. 42, 58 (1987). The first prong of the <u>Strickland</u> test requires a defendant to establish counsel's performance was deficient. <u>Preciose</u>, 129 N.J. at 463. "The second, and far more difficult, prong is whether there exists 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Id.</u> at 463-64 (quoting <u>Strickland</u>, 466 U.S. at 694).

To obtain a new trial based on ineffective assistance of appellate counsel, a defendant must establish that appellate counsel failed to raise an issue that would have constituted reversible error on direct appeal. <u>State v. Echols</u>, 199 N.J. 344, 361 (2009). Appellate counsel will not be found ineffective if counsel's failure to appeal the issue could not have prejudiced the defendant because the appellate court would have found either, that no error had occurred or that it was harmless. <u>State v. Reyes</u>, 140 N.J. 344, 365 (1995); <u>see also</u> <u>State v. Harris</u>, 181 N.J. 391, 499 (2004). Consequently, appellate counsel is not required to raise every possible issue and need only raise issues that have a reasonable possibility of success. <u>State v. Gaither</u>, 396 N.J. Super. 508, 515-16 (App. Div. 2007); <u>see also</u> <u>State v. Morrison</u>, 215 N.J. Super. 540, 549 (App.

Div. 1987) (noting "appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by the defendant").

There exists a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Strickland, 466 U.S. at 689. Further, because prejudice is not presumed, defendant must demonstrate how specific errors by counsel undermined the reliability of the proceeding. State v. Drisco, 355 N.J. Super 283, 290 (App. Div. 2002) (citing U.S. v. Cronic, 466 U.S. 648, 659 (1984)).

V.

Where a PCR court does not conduct an evidentiary hearing, we "conduct a de novo review of both the factual findings and legal conclusions of the PCR court." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016) (quoting Harris, 181 N.J. at 421). We find that neither Willis nor White have overcome the "strong presumption that [trial] counsel rendered adequate assistance," and that their respective counsel "exercise[d] reasonable professional judgment." Strickland, 466 U.S. at 689. After reviewing the extensive record and for the reasons stated in Judge Breland's cogent written opinions, we are satisfied the defendants failed to prove ineffective assistance of counsel, trial or appellate. Preciose, 129 N.J. at 463. For completeness' sake, we note that Willis and

16

White also failed to satisfy the second prong of <u>Strickland</u>. Neither defendant showed their proceedings would have been different but for the errors they alleged. <u>Id.</u> at 463-64. Prejudice cannot be presumed. Defendants failed to draw the required nexus between "specific errors of counsel" and any harm to the reliability of their trial. <u>Drisco</u>, 355 N.J. Super at 290 (citing <u>Cronic</u>, 466 U.S. at 659). No evidentiary hearing is merited.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION