SCHRIDE ASSOCIATES, A LIMITED PARTNERSHIP UNDER THE LAWS OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. TOWNSHIP OF WALL, IN THE COUNTY OF MONMOUTH, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, BOARD OF ADJUSTMENT OF THE TOWNSHIP OF WALL, A PUBLIC BODY CORPORATE, FREDA G. MERCER, LAND USE OFFICER OF THE TOWNSHIP OF WALL AND TOWNSHIP COMMITTEE OF THE TOWNSHIP OF WALL, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued March 29, 1983—Decided August 3, 1983.

Before Judges BOTTER, POLOW and BRODY.

*John Jay Mangini* argued the cause for appellants Wall Tp., Mercer and Wall Tp. Committee (*Mangini, Gilroy, Cramer & McLaughlin,* attorneys; *Roger J. McLaughlin,* on the brief).

*Thomas J. Hirsch* argued the cause for appellant Board of Adjustment (*Schaefer, Crawford & Hirsch,* attorneys; *Thomas J. Hirsch,* on the brief).

*Jeffrey A. Donner* argued the cause for respondent (*Giordano, Halleran & Crahay,* attorneys; *Jeffrey A. Donner,* on the brief).

The opinion of the court was delivered by

BOTTER, P.J.A.D.

The issue decided on this appeal is whether the Wall Township Board of Adjustment (Board) has the power to grant plaintiff's application for bulk and use variances to permit a planned unit development (PUD) on plaintiff's 42 acre tract even though the township has no ordinance that provides for planned developments.[1] The trial court held that the Board of Adjustment had authority to consider such an application and to grant relief, if appropriate. We disagree with that conclusion and reverse.

The facts essential to our disposition are not in dispute, and we will omit some of the procedural history in this controversy. Plaintiff's tract of land is located in the township's R–30 residential zone. This zone provides primarily for single-family dwellings; other permitted uses, such as farming, are irrelevant to this controversy. The zone requires a minimum lot area of 30,000 square feet. Plaintiff desires to develop the property on a planned unit basis with "zero lot lines" for each multiple-dwelling unit. In 1979 it filed a "request for a zoning change" with the Wall Township governing body to permit clustered single-family dwellings with zero lot lines and a density of five dwelling units per acre. The request was denied by formal resolution stating reasons for the denial. Thereafter, plaintiff filed an application for variances to permit construction of 194 clustered single-family houses in a planned development with zero lot lines. This application was withdrawn after the municipal attorney sent a letter opinion to the township's land use officer saying that a PUD could not be granted by variance unless a township ordinance provided standards for such a development. *N.J.S.A.* 40:55D–39 and *Niccollai v. Wayne Tp.*

---

[1] " 'Planned development' means planned unit development [PUD], planned unit residential development [PURD], residential cluster, planned commercial development or planned industrial development." *N.J.S.A.* 40:55D–6. Plaintiff's brief refers to its proposal as a PUD. PUD, PURD, residential cluster, planned commercial development and planned industrial development are terms defined in *N.J.S.A.* 40:55D–6.

*Planning Bd.,* 148 *N.J.Super.* 150, 158 (App.Div.), certif. den. 75 *N.J.* 11 (1977), were cited in support of this conclusion.

Plaintiff withdrew its first application and thereafter submitted a new application for a "bulk use" and "bulk dimensional variances." This time the proposal was for 320 attached dwellings in 46 buildings containing four to eight units each with recreational facilities and open space. The project contemplated "subdivision of the Premises into three or more sections ... with one lot for recreational amenities, three or more lots for remaining open space and individual 'zero lot line' lots for each dwelling unit to permit their individual sale and conveyances in fee simple." The projected density was 7.62 units per acre, with lots of 18 or 19 feet wide by 50 feet deep, and maximum lot coverage of 70%. The proposed dwellings were described as "moderate cost" housing for sale to individual purchasers. Plaintiff cited the normal variance statute, *N.J.S.A.* 40:55D–70(c) and (d), as the source of the Board's authority to issue the requested "bulk use" and "bulk dimensional" variances.

The township's land use officer, defendant Mercer, advised plaintiff that an application for bulk variances required a fee of $35 for each lot of the subdivision on which a variance was requested. A subdivision sketch plat was also requested if sketch plat approval was sought. Plaintiff's response to this letter was the filing of its complaint two weeks later charging that the filing fee request, which would total approximately $11,235 was excessive. Also sought was a determination that the Board had jurisdiction to entertain the application despite the lack of an ordinance authorizing planned unit developments in the municipality. The trial judge upheld plaintiff's contentions and ordered the Board to hold a hearing on plaintiff's application. He also gave plaintiff relief from the requested filing fees.

Defendants contend that the legislative scheme gives a municipality discretionary authority to provide for planned developments in its zoning matrix. They contend that in the absence of

such an ordinance a board of adjustment cannot create PUD zones or projects in the community through the exercise of its variance power.

Plaintiff contends that the exercise of the variance power would not be necessary if the township's ordinance provided for planned developments. Plaintiff contends that the Board's power to grant a use variance includes by definition the power to allow any use not permitted in a given zone, including a PUD, whether or not permitted in any zone in the municipality. In support of this contention plaintiff cites *Fobe Assoc. v. Mayor and Council of Demarest*, 74 *N.J.* 519 (1977), which will be discussed later in this opinion.

A "planned unit development" is defined by the Municipal Land Use Law, *N.J.S.A.* 40:55D–1 *et seq.*, as "an area with a specified minimum contiguous acreage of 10 acres ... to be developed as a single entity according to a plan, containing one or more residential clusters or planned unit residential developments and one or more public, quasi-public, commercial or industrial areas in such ranges of ratios of nonresidential uses to residential uses as shall be specified in the zoning ordinance." *N.J.S.A.* 40:55D–6. By definition then, the ratio of mixed uses in a PUD must be determined by the zoning ordinance. *Id.* *N.J.S.A.* 40:55D–39(c) provides that an ordinance requiring approval by the planning board of subdivisions or site plans, or both, *may* include provisions for planned developments. Such provisions may include variations in standards for preliminary and final approvals to allow agreement to be reached with an applicant as to the basic scheme of the planned development. The ordinance may also provide requirements for the amount, location reservation, and maintenance of common open spaces, may authorize the planning board to vary the density or intensity of land use within sections of the development, and may condition such variation on the grant of an easement to the municipality for reserved common open space areas. The ordinance may also control the timing of construction of various types of uses in the planned development. *Id.*

Thus, municipalities may adopt provisions authorizing planning boards to grant approval for planned developments. Such ordinances should establish standards to guide planning boards. Moreover, *N.J.S.A.* 40:55D–45 specifies that every ordinance providing for planned developments pursuant to Article 6, the subdivision and site plan section of the Municipal Land Use Law, "shall require" the planning board to make certain findings and conclusions prior to approval of a planned development. Among other things the findings pertain to (1) provisions for common open space area, public services, traffic, recreation and other aspects of the development, (2) the development's impact upon the surrounding area, and (3) assurances for the total completion of a development to be constructed over a period of years. *Id.*

*N.J.S.A.* 40:55D–65(c), contained in Article 8, the zoning section of the Municipal Land Use Law, permits a zoning ordinance to provide districts for planned developments, "provided that an ordinance providing for approval of subdivisions and site plans by the planning board has been adopted and incorporates therein the provisions for such planned developments . . . consistent with article 6 of this act." Read together, these statutes contemplate that planned developments may be allowed if appropriate standards and authority have been adopted by ordinance. As noted above, the ratio of residential to nonresidential uses must be specified in the zoning ordinance. *N.J.S.A.* 40:55D–6. The statutory scheme assigns a vital role to planning boards in reviewing applications for planned developments and in making agreements with applicants for such developments pursuant to criteria established by governing bodies through the legislative process of adopting ordinances. Permitting boards of adjustment to grant use variances for a PUD without participation of the planning board and without criteria established by ordinance is completely contrary to the statutory scheme. In a sense it would constitute the usurpation of authority and responsibility reposing in governing bodies to provide for planned develop-

ments with appropriate standards to control their planning and execution.

We recognize that, as part of *Mount Laurel* type of relief from exclusionary zoning, a court may authorize the construction of a planned development in a municipality whose zoning ordinance has been declared unconstitutional. *Southern Burlington County N.A.A.C.P. v. Mount Laurel Tp.*, 92 *N.J.* 158, 265–270, 321–323, 331–332 (1983). We recognize also that in *Fobe Assoc. v. Mayor and Council of Demarest, supra,* 74 *N.J.* at 532 the Court said that the failure of a governing body to amend the zoning ordinance to allow for multi-family housing was "not necessarily a good reason for denial of a variance." In *Fobe* a use variance was sought to permit construction of a garden apartment project on eight acres of land in a single family zone. The Court rejected a challenge to the zoning ordinance based on its absolute prohibition of multi-family dwellings. The Court declined to decide whether multi-family housing *per se* would qualify as a special reason justifying a use variance even when there is a shortage of multi-family housing in the general area. In conclusion, the Court in *Fobe* upheld the denial of the variance on findings below that the development would substantially impair the intent and purpose of the zone plan and ordinance and that the benefits would be outweighed by the resulting harm. 74 *N.J.* at 538.

In the case at hand we are not concerned with a claim for *Mount Laurel* type of relief. Although the third count of plaintiff's complaint attacked the constitutionality of the ordinance on exclusionary zoning grounds, that count was dismissed without prejudice. We find no basis in the *Fobe* holding to conclude that the PUD application should be considered by the Board of Adjustment in the case at hand. At the very least we would distinguish the application in *Fobe,* which was consistent with the *Euclidean* zoning formulation in that municipality, from the application here. *See Rudderow v. Mount Laurel Tp. Comm.,* 121 *N.J.Super.* 409, 413 (App.Div.1972), where the court said:

P.U.D. is the antithesis of the exclusive districting principle which is the mainstay of "Euclidean" zoning. The latter approach divided a community into districts, and explicitly mandated segregated uses. P.U.D., on the other hand, is an instrument of land use control which augments and supplements existing master plans and zoning ordinances, and permits a mixture of land uses on the same tract (i.e. residential, commercial and industrial). It also enables municipalities to negotiate with developers concerning proposed uses, bulk, density and set back zoning provisions, which may be contrary to existing ordinances if the planned project is determined to be in the public and individual homeowner's interest.

We hold that the Wall Township Board of Adjustment lacks authority to grant plaintiff's application for use variances for a PUD, without regard to other issues or objections to the variance application that might be raised. The legislative scheme contemplates the adoption of an appropriate ordinance before a PUD can be considered a permissible use in a municipality. The use of planned developments may be a remedy for unconstitutionally restrictive zoning, but that consideration is not before us. Our conclusion is also supported by the holding in *Niccollai v. Planning Bd. of Wayne Tp., supra,* which dealt with the Municipal Planned Unit Development Act (1967), *N.J.S.A.* 40:55–54 *et seq.* The provisions of that act were replaced by comparable provisions in the Municipal Land Use Law. In *Niccollai* the court held that the power to authorize PUD's *by ordinance* may be exercised only by complying with the enabling legislation. The court said:

The lawmakers would not create powers of such major public import, declare they could be exercised only by municipalities which comply with the meticulously detailed requirements of the enabling law, and then permit by intendment the use of the same powers, which were at most implied under a prior statute, free of the very restraints which it regarded as vital to the public interest and which lie at the heart of the legislation.

We therefore conclude that those forms of land use encompassed by PUD could properly have been authorized at the municipal level only in accordance with the controls specified by that act. [Citations omitted; 148 *N.J.Super.* at 158]

This disposition makes it unnecessary for us to pass on defendants' second point on appeal, that the trial judge erred in allowing plaintiff to proceed with its extensive application without making a substantial deposit toward fees to be assessed by

the Board. Defendants do not question on appeal that plaintiff cannot be assessed more than a reasonable fee for processing its application. We note that the trial court denied defendants' motion for a stay pending appeal on condition that plaintiff would nevertheless pay the Board a fee for the variance application even if it is ultimately determined on appeal that the Board lacked jurisdiction to entertain the application.

We reverse the judgment below and enter judgment in favor of defendants declaring that the Board of Adjustment may not entertain plaintiff's application for variances for the proposed PUD.