292 N.J. Super. 555 (1996)
679 A.2d 206
CARL VIDAL, PLAINTIFF-RESPONDENT,
v.
LISANTI FOODS, INC., MAIER'S BAKERY, AND BOARD OF ADJUSTMENT OF THE TOWNSHIP OF EAST HANOVER, DEFENDANTS-RESPONDENTS. TOWNSHIP OF EAST HANOVER, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
BOARD OF ADJUSTMENT OF THE TOWNSHIP OF EAST HANOVER, LISANTI FOODS, INC., AND MAIER'S BAKERY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 29, 1996.
Decided July 26, 1996.
*557 Before Judges PETRELLA, SKILLMAN and EICHEN.
Louis P. Rago argued the cause for appellant (Weiner Lesniak, attorneys; Mr. Rago, on the brief).
Thomas J. O'Connor argued the cause for respondent Lisanti Foods, Inc. (Waters, McPherson, McNeill, attorneys; Mr. O'Connor, of counsel; Paul A. Conciatori, on the brief).
Richard A. Bowe, attorney for Board of Adjustment of the Township of East Hanover, filed a statement in lieu of brief.
No brief was filed on behalf of respondents Carl Vidal or Maier's Bakery.
The opinion of the court was delivered by SKILLMAN, J.A.D.
Defendants Lisanti Foods, Inc (Lisanti) and Maier's Bakery (Maier's) are contract purchasers of approximately 17.8 acres of a 19.4 acre tract of land located on the eastern side of Ridgedale Avenue in East Hanover Township. The only development on the tract is three houses, two of which apparently have been demolished during the pendency of this litigation.
The entire tract is located within two professional business zones, PB-1 and PB-2, in which the permitted uses are single family residences, banks, municipal facilities, and professional and *558 business offices.[1] The purpose of the PB-1 and PB-2 zones, as described in the Township's last adopted master plan, is to provide a transitional use between neighboring industrial and residential uses. The tract includes all of the only PB-2 zone in the municipality as well as all of one of the PB-1 zones.
Lisanti and Maier's both planned commercial development of the properties they have contracted to purchase. Lisanti, a nationwide distributor of pizza products, sought to construct an approximately 130,000-square-foot office and warehouse/distribution center which would be its national headquarters. Maier's, a commercial bakery, sought to construct an approximately 9,000-square-foot facility consisting of a warehouse distribution center, offices and a retail outlet for the sale of thrift goods.[2]
Although the office uses proposed within these development projects are permitted in the PB-1 and PB-2 zones, Maier's proposed retail sales outlet and both companies' planned warehouse distribution operations are not permitted and thus require use variances. In addition, the proposed development projects require subdivision approval to reconfigure the current four lots on the tract into three lots: one for Maier's; one for Lisanti; and one for an existing residence.
In 1993, Lisanti and Maier's filed applications with defendant East Hanover Board of Adjustment (the Board) for use variances and preliminary site plan approvals for their proposed projects. At the same time, Ridgedale Joint Venture, L.P., which currently owns the entire tract, filed an application for a minor subdivision. After conducting hearings, the Board voted to approve all of the applications. In its resolutions approving Lisanti's use variance application, the Board's essential findings and conclusions, which *559 were repeated almost verbatim in the resolution approving Maier's application, were as follows:
12. The need for PB-1 and/or PB-2 zoning for the subject property as a transition between the industrial zone and the 3 residences currently located on or near the subject property which existed at the time the current zoning ordinances were enacted no longer exists because 2 of those 3 residences are planned to be eliminated as part of the overall development of the subject property and the 1 residence which will remain will stand on a much larger lot than the one on which it currently stands.
....
21. The granting of the requested variances would result in a use that is not inconsistent with the intent and purpose of the zoning ordinances or the township master plan. The master plan states, "The basic overall objective of the Master Plan is to maintain East Hanover as a desirable community of largely one-family homes, while at the same time taking advantage of the township's location astride main transportation routes to encourage business and industrial development and provide a balanced tax base." (emphasis supplied). The site of the proposed use variance is near Route 10 and if the variance is granted it will enable the applicant to do exactly what the Master Plan suggests, i.e. take advantage of a main transportation route in the conduct of its business.
22. The subject property is particularly suitable for the proposed use because of its terrain, its proximity to Route 10, and its proximity to an industrial zone. In addition, the granting of the variance would result in an intensity of development of the property which would be much lower than the currently permitted use.
The Board's grant of a use variance to Lisanti was conditioned upon the applicant not permitting its vehicles "to stand on the property with their motors `idling,'" making a "good faith effort to have trucks coming to and leaving its site come and go from the direction of Route 10 and avoid, to the extent possible, the use of local roads within the Township of East Hanover" and not permitting "local delivery vehicles" to depart from the site after 6:30 a.m. The Board imposed similar conditions upon the use variance granted to Maier's.
The Township of East Hanover and Carl Vidal, a resident of East Hanover, filed separate actions in lieu of prerogative writs challenging the use variances and related approvals. The trial court subsequently consolidated these actions. The court also denied a motion by Maier's to dismiss the East Hanover and Vidal actions on the ground that they were not filed within forty-five *560 days of the Board's grant of Maier's application and thus were untimely under Rule 4:69-6(b)(3).
After briefing and oral argument, the trial court delivered an oral opinion affirming the use variances and related development approvals. In rejecting East Hanover's argument that the grant of use variances for the Lisanti and Maier's proposed commercial developments constituted de facto rezoning of the PB-1 and PB-2 zones, the court stated:
This section of Ridgedale Avenue was clearly envisioned by the master plan as being nonresidential.... [A]n endeavor [was] made in the master plan and in the zoning ordinance to take account of the fact that on this particular 20-acre site that we are dealing with, there existed three residences.
And the master plan attempted to give some protection to those residences in a way which made some economic sense by noting that there was a general need for office space in this section of Morris County, and that by authorizing business and professional offices in this tract, there would be a transition between some existing residential uses and the surrounding harsher business and  and warehouse and industrial  and industrial uses.
But ... [t]he need for office space in Morris County is at the moment ... non-existent. There is, indeed, a substantial oversupply of office space.
And the  the residences in this area were, in the first place, an anomalous carryover, and now, given the use which the owner of this tract proposes to put it to, there basically aren't going to be any residences in this site, or close to it, with respect to which there needs to be a transition zone.
....
The problem, of course, in the case is the fact that the whole zoning district, in effect, is gobbled up by these variance approvals.
That's a problem. I'm very, very reluctant to sustain board of adjustment action which does that. .. .
I have nevertheless decided to sustain the action of the board of adjustment.
First, I think it's clear that the zoning, the basic zoning for the tract was probably not particularly well advised when it was first implemented, and it has become less well advised as time has gone on.
The fact is that there is no need for a transitional zone between residences and other surrounding nonresidential uses. I doubt that there ever was. There is less of a need now.
....
[T]his zone district is itself a somewhat artificial and anomalous zone district, because it is small [in] absolute size, it is small in relationship to the surrounding developed industrial and  and commercial and warehouse neighborhood, and it is small in relationship to the total land mass of the municipality.

*561 When we put it all together I think we have a zoning scheme which is badly askew in fact. It is badly askew in terms of not having been updated as required by law, and  and the zone district in question is small, artificial and anomalous.
We do not have, by variance, the kind of large scale and disproportionate and unharmonious development which would have been created by variance in cases like Feiler and Chesterbrooke. ...
I think we have, in total context, variances which are truly variances, not zoning legislation.
Based on this analysis, the court entered final judgment sustaining the use variances and related approvals.
East Hanover appeals from the judgment in favor of Lisanti and Maier's.[3] We reverse.
A board of adjustment may grant a use variance only "[i]n particular cases and for special reasons," and only if the variance will not cause "substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70.
"[V]ariances to allow new nonconforming uses should be granted only sparingly and with great caution since they tend to impair sound zoning." Burbridge v. Governing Body of Mine Hill, 117 N.J. 376, 385, 568 A.2d 527 (1990) (quoting Kohl v. Mayor of Fair Lawn, 50 N.J. 268, 275, 234 A.2d 385 (1967)). Thus, a board of adjustment "may not, in the guise of a variance proceeding, usurp `the legislative power reserved to the governing body of the municipality to amend or revise the plan....'" Feiler v. Fort Lee Bd. of Adjustment, 240 N.J. Super. 250, 255, 573 A.2d 175 (App.Div. 1990) (quoting Leimann v. Board of Adjustment of Cranford, 9 N.J. 336, 340, 88 A.2d 337 (1952)), certif. denied, 127 N.J. 325, 604 A.2d 600 (1991). Moreover, since "[t]he Municipal Land Use Law, L. 1975, c. 291, [has] eliminated the mandated role of the governing body in granting use variances [under the prior *562 land use law], ... the need for boards of adjustment to adhere strictly to their limited role in land use administration" has been enhanced. Ibid.; accord Medici v. BPR Co., 107 N.J. 1, 20, 526 A.2d 109 (1987) ("delegation of the authority to grant use variances to boards of adjustment increases the likelihood that such variances may conflict with the intent of the master plan and zoning ordinance to a greater extent than was the case when the power to grant them was vested in the governing body").
In Township of Dover v. Board of Adjustment of Dover, 158 N.J. Super. 401, 411, 386 A.2d 421 (App.Div. 1978), we explained that the "dispositive considerations ... which underlie the statutory allocation of function" between the municipal governing body and its administrative land use agencies include the governing body's "ultimate responsibility to establish, by the adoption of its zoning ordinances and amendments thereto, the essential land use character of the municipality." It does this "by the geographical delineation of its districts and, uniformly within each district, the delineation of the uses permitted therein and the limitation schedules applicable thereto in terms of lot size, lot coverage, height restrictions and the like." Id. at 411-12, 386 A.2d 421. On the other hand, the "variance power" allocated to municipal land use agencies is intended only to "accommodate individual situations which, for a statutorily stated reason, require relief from the restrictions and regulations otherwise uniformly applicable to the district as a whole." Id. at 412, 386 A.2d 421. The power to grant variances is so confined to "avoid the potential" which this power "might otherwise have for substantially affecting the essential land use scheme of the entire district itself and perhaps of the entire municipality as well." Ibid. "The basic inquiry in each case must be whether the impact of the requested variance will be to substantially alter the character of the district as that character has been prescribed by the zoning ordinance." Id. at 412-13, 386 A.2d 421.
[This] inquiry requires analysis and evaluation of such factors as the size of the tract itself; the size of the tract in relationship to the size and character both of the district in which it is located and the municipality as a whole; the number of *563 parcels into which it is anticipated that the tract will be subdivided if subdivision is part of the plan, and the nature, degree and extent of the variation from district regulations which is sought.
[Id. at 413, 386 A.2d 421.]
See also Chesterbrooke Ltd. Partnership v. Planning Bd. of Chester, 237 N.J. Super. 118, 127-29, 567 A.2d 221 (App.Div.), certif. denied, 118 N.J. 234, 570 A.2d 984 (1989).
In Feiler v. Fort Lee Bd. of Adjustment, supra, 240 N.J. Super. 250, 573 A.2d 175, we reversed a board of adjustment's grant of use and bulk variances for a mixed commercial and high use residential project on a 15.69 acre site that was zoned partly for commercial uses and partly for one and two family residences. As with the PB-2 zone involved in this case, the site encompassed the entire residential zone. Id. at 252, 573 A.2d 175. The board found the "inappropriateness" of the residential use for which the property was zoned to be a "special reason" for granting the requested use variance. Id. at 254, 573 A.2d 175. However, we concluded that in making this finding the board had "blatantly arrogated to itself the power to reject existing zoning and to substitute its idea of an appropriate zone plan." Id. at 256, 573 A.2d 175. We pointed out that "[t]he remedy for inappropriate zoning is legislative or judicial action," ibid., rather than a board of adjustment assuming the authority to determine which uses should be permitted in a particular area. We also noted that the board's grant of a use variance had "radically [altered] an entire zone district." Ibid. We further explained that:
The power to grant bulk and use variances ... is limited to adjusting the zoning impact on specific pieces of property in individual cases for special reasons. "[I]f the difficulty is common to other lands in the neighborhood so that the application of the ordinance is general rather than particular," a variance may not be granted. Lumund, [v. Board of Adjustment of Rutherford], 4 N.J. [577,] 583, 73 A.2d 545 [1950]. Application of the variance power to convert an entire low density two-family zone into a high density residential tower district exceeded the board's statutory authority whether or not the existing zoning was inappropriate. The board effected a de facto rezoning of the entire district, thereby exercising a power delegated to the governing body.
[Id. at 256-57, 573 A.2d 175.]
*564 See also Schoelpple v. Township of Woodbridge, 60 N.J. Super. 146, 152-53, 158 A.2d 338 (App.Div. 1960).
The Board's grant of use variances to Lisanti and Maier's based on its view that the present zoning of the tract is inappropriate constituted an arrogation of the power to rezone similar to the one we identified in Feiler. The linchpin of the Board's decision was its finding that "[t]he need for PB-1 and/or PB-2 zoning for the subject property as a transition zone" to buffer the residences on the site from a nearby industrial zone "no longer exists." However, the continuing viability of the present zoning involves circumstances that are equally applicable to the entire tract rather than being peculiar to any specific piece of property and thus is a matter within the exclusive authority of the governing body to address through rezoning. This conclusion is reinforced by the fact that the grant of the Lisanti and Maier's applications alters the permitted uses in nearly the entire PB-1 and PB-2 zones. Therefore, the Board's approval of these use variance applications constituted an impermissible de facto rezoning of the tract.
Furthermore, these variances would substantially alter the character of the PB-1 and PB-2 zones. Whereas the use of a property for business and professional offices involves primarily passenger vehicles, most of which are driven into and out of the property at the beginning and close of the work day, the development of the Lisanti and Maier's sites with large warehouse facilities would involve substantial truck traffic, much of it during nighttime hours. The Board considered this difference in traffic impact as a reason favoring development of the tract in accordance with Maier's and Lisanti's plans because such development would have a lesser impact upon traffic than an office complex, especially during peak commuting hours. However, the evaluation of the relative impacts upon the public of heavy passenger vehicle traffic at peak commuting hours and of truck traffic that has a lesser effect upon road congestion but may annoy residents in other *565 ways, such as by generating excess noise during evening hours, is the kind of policy judgment that the Municipal Land Use Law assigns to the governing body to make in connection with the adoption or amendment of the zoning ordinance. Therefore, the development of the Lisanti and Maier's properties in accordance with the use variances granted by the Board would "substantially alter the character of the [PB-2 and PB-1 zones] as that character has been prescribed by the zoning ordinance." Township of Dover v. Board of Adjustment of Dover, supra, 158 N.J. Super. at 412-13, 386 A.2d 421.
The Board's resolutions approving the Lisanti and Maier's applications set forth reasons that could support rezoning of the PB-1 and PB-2 zones, or perhaps a declaration of invalidity of the current zoning, but do not identify any "special reason" that would justify use variances. The Board stated with respect to each property that "[t]he subject property is particularly suitable for the proposed use because of its terrain, its proximity to Route 10, and its proximity to an industrial zone." However, these characteristics are common to all properties in the PB-2 and PB-1 zones rather than being a peculiar feature of any specific property. Cf. Medici v. BPR Co., supra, 107 N.J. at 24, 526 A.2d 109 (holding that "[t]he fact that the site is near an interstate highway does not distinguish it from any other property in the vicinity of the highway" and thus does not constitute a special reason sufficient to sustain a use variance). Therefore, these characteristics would be appropriate for the governing body to consider in determining whether to continue the current zoning but do not provide a basis for the Board to grant use variances. See Feiler v. Fort Lee Bd. of Adjustment, supra, 240 N.J. Super. at 256-57, 573 A.2d 175.
We also reject Lisanti's argument that the governing body's failure to provide for a reexamination of the municipality's master plan and development regulation within six years of the last such reexamination, as required by N.J.S.A. 40:55D-89, provides *566 a basis for the grant of a use variance.[4]N.J.S.A. 40:55D-89.1 provides that the planning board's failure to conduct a reexamination of the master plan and development regulations in conformity with N.J.S.A. 40:55D-89 establishes "a rebuttable presumption that the municipal development regulations are no longer reasonable." Thus, the evident purpose of N.J.S.A. 40:55D-89.1 is to encourage the governing body and planning board to *567 periodically review the master plan and zoning ordinance by rendering the ordinance more vulnerable to judicial challenge if it is not updated in conformity with N.J.S.A. 40:55D-89. See Lionshead Woods Corp. v. Kaplan Bros., 243 N.J. Super. 678, 683-85, 581 A.2d 137 (Law Div. 1990). However, N.J.S.A. 40:55D-89 and N.J.S.A. 40:55D-89.1 do not reflect a legislative intent to expand the board of adjustment's power to grant use variances in the event the governing body and planning board default in the performance of their statutory responsibilities.[5]
We also note that the impact of granting a use variance is significantly different from a judicial declaration that a zoning ordinance is unreasonable. If a use variance is granted, the applicant is permitted to develop its property in accordance with its proposed use without further involvement by the governing body in determining whether that particular use is desirable or what conditions should be imposed in connection therewith. On the other hand, if a zoning ordinance is invalidated, the governing body is given the opportunity to adopt a new ordinance and to establish conditions that may be appropriate for whatever new uses are permitted thereunder. In this case, for example, the governing body could determine that even if the current zoning is invalid, the property should be rezoned for commercial uses other than a warehouse distribution center or retail food outlet. The governing body also could conclude that even if the uses proposed by Lisanti and Maier's are appropriate, they should be subject to different requirements regarding setback lines, lot coverage, parking, etc., than would be appropriate for an office or professional building. Therefore, our conclusion that the Lisanti and Maier's commercial development plans can be implemented only through rezoning or a judicial challenge to the validity of the present zoning serves to effectuate the legislative "objective of encouraging municipalities to make zoning decisions by ordinance rather *568 than by variance." Medici v. BPR Co., supra, 107 N.J. at 5, 526 A.2d 109.
Accordingly, the judgment of the trial court sustaining the Board's resolutions granting the Maier's and Lisanti use variance applications and the related site plan and subdivision approvals is reversed.
NOTES
[1] The only apparent differences between the regulations governing these two zones are lot size and bulk requirements.
[2] Maier's sent a letter to the court shortly before oral argument indicating that it has now abandoned these plans. See n. 3, infra. However, the use variance granted to Maier's remains in effect.
[3] Maier's filed a separate appeal from the denial of its motion to dismiss the actions as untimely. However, Maier's subsequently sent a letter to the court indicating that it "no longer has an interest in participating in the instant appeals." Accordingly, we have dismissed Maier's appeal by a separate opinion that is also being filed this date. See Vidal v. Lisanti Foods, Inc., A-787-94T1.
[4] Subsequent to the oral argument, the East Hanover Planning Board approved a resolution adopting a supplement to the 1994 Reexamination of the Master Plan for East Hanover, dated December 1995, which concluded that the present zoning of the PB-1 and PB-2 districts should be retained. This report expressly rejected the rezoning of the area to permit the uses proposed by Lisanti and Maier's:

We do not recommend the rezoning of the property to allow retail uses. Adequate zoning exists in the Township for retail uses and traffic problems discussed previously would be increased....
Rezoning the property for warehouse use is also an undesirable option. As previously mentioned, Ridgedale Avenue is a major path of travel between Route 10 and Route 280 and is also one of the major paths of travel to the Township's retail center. Construction of warehouse type uses would increase the amount of large trucks needing to travel on Ridgedale Avenue. Trucks leaving the site require a longer time to accelerate than passenger vehicles and the time needed to make a turn is greater than that required for passenger vehicles. These factors could present safety hazards.
Ridgedale Avenue provides the semblance of a "downtown". We believe that [it] is desirable to maintain an aesthetic quality to the approaches to the downtown area. Large retail complexes are generally confined to Route 10.... Warehouse and industrial uses would generally be out-of-character with most of Ridgedale Avenue.
....
There are many residences along and adjoining Ridgedale Avenue north of the site. It is our understanding there are complaints from residents concerning truck traffic at all hours (i.e., day and night). Increased truck traffic from warehouse uses would further exacerbate this condition.
The preponderance of traffic from office uses is from automobiles. Accordingly, residences along and adjoining Ridgedale Avenue would be affected minimally by increased noise and vibrations generated by vehicles from an office development. Traffic during the day and evening would be less than from retail uses and, possibly, warehouse and manufacturing uses.
Additionally, offices can be set back from Ridgedale Avenue and be "camouflaged" with landscaping. We believe this is an important issue since the section of Ridgedale Avenue serves as a "gateway" to the "downtown" area of East Hanover.
[5] Insofar as the trial court's opinion in National Auto. Salvage Serv. v. Delran Township Bd. of Adjustment, 236 N.J. Super. 579, 582-83, 566 A.2d 572 (Law Div. 1989) suggests a contrary conclusion, it is overruled.