768 A.2d 803 (2001)
338 N.J. Super. 242
VICTOR RECCHIA RESIDENTIAL CONSTRUCTION, INC., a Corporation of the State of New Jersey, Plaintiff-Appellant,
v.
ZONING BOARD OF ADJUSTMENT OF the TOWNSHIP OF CEDAR GROVE, and The Township of Cedar Grove, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted February 13, 2001.
Decided March 20, 2001.
*804 Stickel, Koenig & Sullivan, Cedar Grove, attorneys for appellant (Stuart R. Koenig, on the brief).
McElroy, Deutsch & Mulvaney, Morristown, attorneys for respondents (Florina A. Moldovan, on the brief).
*805 Before Judges PETRELLA, NEWMAN and WELLS.
The opinion of the Court was delivered by PETRELLA, P.J.A.D.
Plaintiff, Victor Recchia Residential Construction, Inc. (Recchia),[1] appeals from the entry of judgment by the Law Division upholding the denial by the Township of Cedar Grove Board of Adjustment (Zoning Board) of its application for a use variance, and declaring the Township zoning ordinance to be consistent with the Township's master plan.
On appeal, Recchia contends, (1) the Zoning Board improperly denied its application for a use variance and the Law Division improperly upheld the Zoning Board; and (2) the judge erred in finding the zoning ordinance consistent with the master plan.
Recchia applied to the Zoning Board for a use variance pursuant to N.J.S.A. 40:55D-70d for two tracts of land which are split-zoned[2] with a small portion of the property in the residential R-8 zone and the remainder in the limited industrial M-2 zone. Recchia sought the variance to allow seven single-family residential uses consistent with the R-8 zone. There is presently one house encompassing most of the residential portion of the two lots involved, which each have fifty feet of frontage on Little Falls Road.
The Zoning Board denied Recchia's application and set forth specific findings of fact and conclusions by resolution. The Zoning Board found that residential development of the property would be improper as it would impede the future development of the M-2 split-zoned property to the south of the subject property on Little Falls Road.
On April 23, 1999, plaintiff filed a complaint in lieu of prerogative writs in the Superior Court, Law Division. The judge upheld the actions of the Zoning Board and found the zoning ordinance was consistent with the master plan.

I.
On January 10, 1998, Recchia entered into an agreement to purchase lots 304 and 305 on the Cedar Grove tax maps and commonly known as 367 Little Falls Road, subject to the receipt of the necessary approvals to develop the property. The property is located on the corner of Little Falls Road and Old Bridge Road. Two lots are involved. Lot 305 is a corner lot with approximately fifty feet of frontage on Little Falls Road to the east and approximately 463 feet of frontage on Old Bridge Road. Lot 304 has frontage of about fifty feet on Little Falls Road and abuts lot 305 to the south. Lot 305 appears to be entirely zoned M-2. The R-8 zoned portion of lot 304 is a rectangle measuring approximately 50 feet by 150 feet.
As noted, the property is "split-zoned", approximately 7500 square feet of lot 304 lies in the R-8 residential zone and the remaining 60,000 square feet of the property lies in the M-2 limited industrial district zone. The portion of lot 304 in the R-8 zone begins at the property's southernmost point abutting Little Falls Road and proceeds north along Little Falls Road for fifty feet, and east into the property approximately 150 feet. The prior owner lived in an existing residence on the property spanning both lots and both the residential and industrial zones. The house is located primarily on lot 305 at the corner of Little Falls Road and Old Bridge Road and the remainder of the property essentially serves as a large backyard. The only other structure on the property, a *806 garage separate and some distance from the house, is in the M-2 zone.
South of the property lies lot 303, which is similarly split-zoned and contains an existing residence fronting on Little Falls Road. The M-2 zoned portion of the neighboring property (lot 303) is used as a large backyard and if developed for industrial use it would have no access to Little Falls Road except over the R-8 zoned portion of the property. Any access to Old Bridge Road is blocked to the north by the property under contract to Recchia (lots 304 and 305). Approximately five lots to the south of lot 303 and on Little Falls Road are also split-zoned and contain single-family homes on Little Falls Road.
The area surrounding the property to the east and north is zoned M-2 and the property to the west is zoned M-1. On the zoning map this residential area containing the property in question appears like a thumb stuck in the industrial district zone from the south. Recchia presented a licensed planner who testified before the Zoning Board that the property to the east is put to a light industrial use with a driveway accessing Old Bridge Road. The planner further testified that the current landscaping on the property to the east consisted of fifty feet of fifteen to eighteen feet tall evergreen trees on the border of the properties which serve as a buffer and hide the industrial building from the subject property.
The lot north of the property, across Old Bridge Road, is also zoned M-2 and was described as occupied by a publishing business. West of the property, across Little Falls Road, is zoned M-1, light industrial, and is occupied by the Cedar Grove Public Works Garage and to the north of the garage, the Cedar Grove Sewerage Treatment Plant.
Recchia proposed to subdivide the two lots into seven separate single family residential lots fronting on Old Bridge Road, each in accordance with the lot area requirements for the R-8 zone. He planned to leave the existing residence on the corner and subdivide the remaining property into six additional lots. Recchia applied for a use variance to permit residential use of the M-2 zoned portion of the property. The Zoning Board held hearings on the application on September 8, 1998, October 21, 1998, November 23, 1998, and February 9, 1999.
The Township's planning consultant and Recchia's planner agreed that any development of the subject property, whether residential or industrial, would require variances. The planners differed, however, over the extent of the property's potential for industrial development versus residential development.
Recchia's planner testified that the proposed residential development would require only a use variance for use of the M-2 zone, whereas industrial development of the property as it is currently zoned would require a lot area variance and allow limited space for development. Recchia's planner further testified that if the whole property were used for M-2, including the approximately 7,500 square feet in the R-8 zone, a use variance and an area variance would be required for M-2 development on a lot smaller than 70,000 square feet.
The Township's planner reviewed the potential M-2 development of the property and presented a hypothetical development leaving the existing residence intact. He discussed subdividing the lot to separate the existing residence from the M-2 use, leaving approximately 51,000 square feet for M-2 development. The subdivision would require a use variance because part of the home is on the M-2 portion. Taking into account the various buffer and setback requirements, the Township's planner concluded that development of the property would also require a rear setback variance and that with the rear setback variance, the property would then allow a building envelope of approximately 17,045 square feet.
*807 The Zoning Board ultimately concluded that "the premises could reasonably accommodate an M-2 use within the parameters of the M-2 portion of this split lot."
The Zoning Board also heard testimony from Recchia's traffic expert and the Zoning Board's traffic engineer. Both experts essentially agreed that the development would have little effect on traffic at the intersection of Little Falls Road and Old Bridge Road. The Zoning Board rejected the testimony of both experts as "fly[ing] in the face of common sense."
The land use element of the master plan adopted by Cedar Grove in 1991 and reexamined in 1997, designates the subject property and the portions of the relatively few lots split-zoned to the south as residential property. Recchia's expert testified that residential, and not industrial, use of the property is also consistent with the text of the master plan precluding the introduction of incompatible nonresidential use into residential areas. The Township's planning consultant conceded that the residential use proposed by Recchia is not entirely consistent with the land use element of the master plan, but maintained that the appropriate way to solve the discrepancy was by amending the ordinance or the master plan and not through a use variance.
With respect to Recchia's application for residential development, the Township's planner asserted that the proposed subdivision would negatively impact the zoning ordinance by landlocking the M-2 zoned portions of the split-zoned property located to the south of the subject property. He maintained that because those properties were split-zoned and the residential portions have homes bordering Little Falls Road, the only way the M-2 portions of those properties could be used for industrial purposes is if they received access to Old Bridge Road across the subject property. If the property was developed residentially such access would be blocked. The Zoning Board agreed and found that, "the balance of the M-2 contiguous and adjacent land use areas would be impacted by the presence of residential uses. One need only look to the adjacent property... to observe that a residential use on the premises in question would carve up the potential for an M-2 conforming use on the [property to the south] and also create an incompatible land use situation with future developments...."

II.
The power to zone is an exercise of the police power delegated to municipalities by the Legislature. Manalapan Realty v. Tp. Committee, 140 N.J. 366, 380, 658 A.2d 1230 (1995) (citing Riggs v. Long Beach Tp., 109 N.J. 601, 610, 538 A.2d 808 (1988)). The Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 et seq., delegates considerable power and discretion to municipalities to zone within the statutory scheme. As such, zoning ordinances are presumed to be valid and the burden of rebutting the presumption lies with the party seeking to invalidate the ordinance. Ibid. To successfully challenge an ordinance, a party must show that the ordinance is "clearly arbitrary, capricious or unreasonable, or plainly contrary to fundamental principles of zoning or the [zoning] statute." Ibid. (quoting Bow & Arrow Manor, Inc. v. Town of West Orange, 63 N.J. 335, 343, 307 A.2d 563 (1973)). "Although the judicial role is circumscribed, a court may declare an ordinance invalid if in enacting the ordinance the municipality has not complied with the requirements of the statute." Riggs v. Long Beach Tp., supra (109 N.J. at 611, 538 A.2d 808).
The MLUL has provided an enhanced role for land use planning in the establishment of local zoning ordinances. See id. at 618-623, 538 A.2d 808 (Handler, J. concurring). Pursuant to N.J.S.A. 40:55D-62a,
The governing body may adopt or amend a zoning ordinance relating to the nature and extent of the uses of land and of buildings and structures thereon. Such ordinance shall be adopted after *808 the planning board has adopted the land use plan element and the housing plan element of a master plan, and all of the provisions of such zoning ordinance or any amendment or revision thereto shall either be substantially consistent with the land use plan element and the housing plan element of the master plan or designed to effectuate such plan elements; provided that the governing body may adopt a zoning ordinance or amendment or revision thereto which in whole or part is inconsistent with or not designed to effectuate the land use plan element and the housing plan element, but only by affirmative vote of a majority of the full authorized membership of the governing body, with the reasons of the governing body for so acting set forth in a resolution and recorded in its minutes when adopting such a zoning ordinance....
The ordinance and the master plan must be substantially consistent. Where the governing body affirmatively changes the zoning ordinance, either by amendment or adoption, so that it is inconsistent with the master plan, that change must be effectuated by a majority vote of the full governing body and they must set forth specific reasons for doing so. Rte. 15 Assoc. v. Jefferson Tp., 187 N.J.Super. 481, 487, 455 A.2d 518 (App.Div.1982). Here, an existing zoning ordinance was in effect when a new master plan was adopted in 1991. The governing body did not change the zoning ordinance to reflect the new land use element.[3] This caused an inconsistency between the master plan and the ordinance with respect to the split lots in the area involved in this litigation. Hence, the question is whether the ordinance is substantially consistent with the master plan.
Because the MLUL does not define substantially consistent, our Supreme Court has given those words their plain meaning. Manalapan Realty v. Tp. Committee, supra (140 N.J. at 384, 658 A.2d 1230). The Court stated that, "the concept of `substantially consistent' permits some inconsistency, provided it does not substantially or materially undermine or distort the basic provisions and objectives of the Master Plan." Ibid.
Applying that standard, we are satisfied that the zoning ordinance is substantially consistent with the master plan.
It is undisputed that the Cedar Grove zoning ordinance is not wholly inconsistent with the land use element of the master plan. The associated land use map is not intended to serve as a lot-specific zoning ordinance to be rubber stamped by the governing body. Riggs v. Long Beach Tp., supra (109 N.J. at 623, 538 A.2d 808) (Handler, J. concurring) (noting that the master plan does not have the operative effect of a zoning ordinance); Faulhaber v. Tp. Committee, 274 N.J.Super. 83, 95-96, 643 A.2d 52 (Law Div.1994) (stating that "if the map within the master plan were to be considered lot-specific, there would be no need for a comparison between the zoning ordinance and the map as the map would control"). Such an interpretation of the MLUL would permit the Planning Board to usurp the power of the governing body to enact local zoning laws. The intent of the master plan is to provide recommendations to guide the governing body in establishing the zoning ordinance. See N.J.S.A. 40:55D-28a. Thus, partial inconsistency between the land use map and the zoning ordinance does not render the ordinance invalid.
We must determine whether the zoning ordinance so "undermine[s] or distort[s] the basic provisions and objectives *809 of the Master Plan ...." to warrant invalidation of the ordinance. Manalapan Realty v. Tp. Committee, supra (140 N.J. at 384, 658 A.2d 1230). Among the stated goals and policies of the Cedar Grove Master Plan is to "protect and reinforce the prevailing residential development patterns in the community, preclude any introduction of incompatible non-residential use in these neighborhoods, and reinforce prevailing intensities of use." Examination of the zoning ordinance indicates that it furthers the policy of the master plan, perhaps more so than the land use map. As stated, the split-zoned property along Little Falls Road is essentially a narrow residential peninsula and appears surrounded by industrial property in an arc of over 300 degrees. Increasing residential development in this area would inevitably intensify the clash of incompatible uses contrary to the directive of the master plan.
Recchia places great emphasis on a statement in the 1997 reexamination report stating that "[a]ll split-lot zoning should be reviewed and modified as appropriate." This statement is not specific enough to support a finding of substantial inconsistency simply because the property in question is split-zoned. Nowhere in either the master plan or the reexamination report does the Planning Board call for the elimination of all split-zoning. Moreover, in both the master plan and the reexamination report the Planning Board recommended specific modifications to certain areas of the zoning ordinance, but did not call for any specific modification of the relatively small split-lot area in question.
We conclude that the zoning ordinance furthers the goals of the master plan and is substantially consistent with it. Hence, we affirm the Law Division Judge's declaration that the Township zoning ordinance is consistent with the Township's master plan.

III.
N.J.S.A. 40:55D-70d grants the Zoning Board the power to grant a variance to allow for a use in a zone in which that use is otherwise prohibited. The Zoning Board's exercise of that considerable power and discretion is presumptively valid. New Brunswick Cellular v. South Plainfield Bd. of Adj., 160 N.J. 1, 14, 733 A.2d 442 (1999). Judicial review of zoning board decisions is limited to a determination of whether the decision "is supported by the record and is not so arbitrary, capricious or unreasonable as to amount to an abuse of discretion." Ibid. (quoting Smart SMR v. Fair Lawn Bd. of Adj., 152 N.J. 309, 327, 704 A.2d 1271 (1998)).
The Supreme Court summarized the requirements of N.J.S.A. 40:55D-70d as follows:
The statute thus requires an applicant to prove both positive and negative criteria to obtain a use variance. In general, the positive criteria require that an applicant establish "special reasons" for granting the variance. "The negative criteria require proof that the variance `can be granted without substantial detriment to the public good' and that it `will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.'"
[Smart SMR v. Fair Lawn Bd. of Adj., supra (152 N.J. at 323, 704 A.2d 1271) (quoting Sica v. Wall Bd. of Adj., 127 N.J. 152, 156, 603 A.2d 30 (1992))].
The MLUL has delineated the powers of the governing body and the Zoning Board of Adjustment. Under the MLUL, only the governing body has the power to amend or adopt zoning ordinances. Vidal v. Lisanti Foods, Inc., 292 N.J.Super. 555, 561, 679 A.2d 206 (App.Div.1996). The Zoning Board may not utilize its power to grant variances to usurp the legislative power delegated to the governing body to effect the zoning scheme. Ibid. (quoting Feiler v. Fort Lee Bd. of Adj., 240 N.J.Super. 250, 255, 573 A.2d 175 (App.Div.1990)). In short, the Zoning Board may not rezone by variance.
*810 Specifically, the Zoning Board may not grant use variances to a specific parcel "[i]f the difficulty is common to other lands in the neighborhood so that the application of the ordinance is general rather than particular." Feiler v. Fort Lee Bd. of Adj., supra, (240 N.J.Super. at 256-257, 573 A.2d 175) (quoting Lumund v. Bd. of Adj. of Rutherford, 4 N.J. 577, 583, 73 A.2d 545 (1950)). "The power to grant variances is so confined to `avoid the potential' which this power `might otherwise have for substantially affecting the essential land use scheme of the entire district itself and perhaps of the entire municipality as well.'" Vidal v. Lisanti Foods, Inc., supra (292 N.J.Super. at 562, 679 A.2d 206) (quoting Tp. of Dover v. Bd. of Adj. of Dover, 158 N.J.Super. 401, 412, 386 A.2d 421 (App.Div.1978)).
Here, Recchia's objections to the ordinance are not within the proper scope of a use variance application. Although Recchia attempts to bring his argument within the use variance requirements, the thrust of the argument is that, contrary to the master plan, the property is improperly split-zoned. It is undisputed that any development of the property will require variances and that industrial development will likely require multiple variances. However, these impediments to development are not unique to Recchia's property. The entire area is affected by the designation and the split-zoned properties all have limited potential for development, particularly considering their proximity to the uses noted above in the contiguous zones. The grant of a use variance under these circumstances would amount to de facto rezoning of so much of the property in the light industrial zone to an R-8 zone. Thus, the Zoning Board properly denied the application.
Affirmed.
NOTES
[1] Recchia was contract purchaser of property in the Township of Cedar Grove contingent on approval by the Zoning Board of an application to subdivide the property into seven residential lots.
[2] "Split-zoned" refers to the fact that the subject property, and certain adjoining lots, are partially in two zones.
[3] It is noteworthy that the governing body did not affirmatively amend or adopt the ordinance to be inconsistent with the master plan, rather the new master plan is inconsistent with the existing ordinance. The plain language of the statute does not require the governing body to justify the inconsistency by majority vote and a statement of reasons where the governing body has not affirmatively changed the zoning ordinance by adoption, amendment or revision.