876 A.2d 320 (2005)
378 N.J. Super. 485
TOWNSHIP OF NORTH BRUNSWICK, Plaintiff-Respondent,
v.
ZONING BOARD OF ADJUSTMENT OF the TOWNSHIP OF NORTH BRUNSWICK, Defendant-Respondent, and
Kaplan Companies, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 17, 2005.
Decided June 23, 2005.
*321 Jack Borrus argued, North Brunswick, the cause for appellant (Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, attorneys; Mr. Borrus and Rosalind Westlake, of counsel and on the brief).
*322 Arlene M. Turinchak, Somerset, argued the cause for respondent Township of North Brunswick (McGimpsey & Cafferty, attorneys; Ms. Turinchak and Thomas J. Cafferty, on the brief).
Respondent Zoning Board of Adjustment of the Township of North Brunswick did not file a brief.
Before Judges KESTIN,[1] LEFELT and ALLEY.
The opinion of the court was delivered by
LEFELT, J.A.D.
The North Brunswick Zoning Board of Adjustment granted use and bulk variances to Kaplan Companies to permit the construction in the Township's R-2 zone of a luxury apartment building for active senior citizens. The Township of North Brunswick sued Kaplan and the Board, claiming that by granting the variances the Board had usurped the Township's exclusive zoning power. Kaplan now appeals from Judge Hurley's judgment in favor of the Township, reversing the Board's grant of the variances. We affirm.
Here are the facts. Kaplan hoped to construct in the Township's R-2 zone a four-story, luxury, apartment building with eighty-five units, and an average height of fifty-three and one-half feet, for active, affluent adults over the age of fifty-five. The proposed site for the building was a 3.66-acre oblong lot located on the eastbound side of a collector roadway. The density of the proposal would be 23.22 units per acre. The building, when constructed, would appear much like an upscale hotel with a main entrance lobby containing a concierge station, central corridors, two elevators, a fitness center, activity rooms, and secure parking. The building was to have 163 parking spaces, ninety-nine of which would be under the building.
According to the Township's Master Plan, however, only single-family detached homes of no more than thirty feet in height were permitted in the R-2 zone, and no more than 2.9 homes could be built per acre. The only other housing developments in the Township that are built to a density that exceeds thirteen units per acre are the Township's two low income housing projects, both of which are incorporated into the Township's Fair Share Plan for affordable housing. Additionally, 180 parking spaces were required under the Master Plan for an eighty-five unit building. Therefore, Kaplan sought a use variance, plus bulk variances for building height, lot density, and requisite parking.
Without finding the use inherently beneficial, the Board, in February 2003, granted the requested variances, finding that the proposed use was, among other things, uniquely suited to the location, an ideal transitional use between the balance of the R-2 zone and the nearby industrial uses, beneficial for the community, and aesthetically pleasing. In granting the variances, the Board ignored the zoning history of this particular lot.
In 1985, the subject property had been zoned for transitional mixed uses such as multi-family dwellings of up to six units per acre. When the Master Plan was updated in 1999, however, this lot was one of twenty-one lots comprising a twenty-four-acre area specifically designated for future density reduction to avoid the potential construction of numerous small apartment buildings on narrow, deep lots. *323 The entire twenty-four-acre area, including the subject site, was ultimately rezoned R-2 in 2002.
Based on this history, Judge Hurley found "[t]he grant of the variance [was] clearly contrary to the intent and purpose of the Township's Master Plan and zone plan." "The overall effect of the variance is to alter the character of the area contrary to the plan of the governing body .... [and] is clearly inconsistent with the intended development scheme of the district." We agree with Judge Hurley and affirm substantially for the reasons he articulated in his June 15, 2004 written decision. We add the following.
A municipal governing body is vested with the ultimate responsibility of establishing the essential land use character of the municipality through the adoption of zoning ordinances that divide the municipality into districts, identify the uses permitted in each district, and impose general limitations on construction. Paruszewski v. Twp. of Elsinboro, 154 N.J. 45, 51-54, 711 A.2d 273 (1998); Twp. of Dover v. Bd. of Adjustment of Dover, 158 N.J.Super. 401, 411-12, 386 A.2d 421 (App.Div.1978). By contrast, the variance power of a board of adjustment is intended merely to accommodate individual situations where relief from the applicable ordinance is warranted. Paruszewski, supra, 154 N.J. at 53, 711 A.2d 273; Twp. of Dover, supra, 158 N.J.Super. at 412, 386 A.2d 421.
Ordinarily, the manner in which a board of adjustment exercises its exclusive statutory power is not subject to monitoring by the municipal governing body. Paruszewski, supra, 154 N.J. at 54-55, 711 A.2d 273; Twp. of Dover, supra, 158 N.J.Super. at 408-09, 386 A.2d 421. The municipal governing body may not judicially challenge the propriety of a particular board decision, provided the board of adjustment has acted within the ambit of its authority. Twp. of Stafford v. Stafford Twp. Zoning Bd. of Adjustment, 154 N.J. 62, 77-78, 711 A.2d 282 (1998); Twp. of Dover, supra, 158 N.J.Super. at 409, 386 A.2d 421.
However, a municipal governing body may sue to protect the integrity of its own legislatively conferred powers. Twp. of Stafford, supra, 154 N.J. at 76-77, 711 A.2d 282; Twp. of Dover, supra, 158 N.J.Super. at 409-10, 386 A.2d 421. That is, a municipal governing body may bring suit when a board has exceeded its statutory powers and attempted, through a use variance, to impose its own view as to the most appropriate use or uses for a particular portion of a municipality. Twp. of Dover, supra, 158 N.J.Super. at 409, 386 A.2d 421. Indeed, "since `[t]he Municipal Land Use Law ... [has] eliminated the mandated role of the governing body in granting use variances [under the prior land use law], ... the need for boards of adjustment to adhere strictly to their limited role in land use administration' has been enhanced." Vidal v. Lisanti Foods, Inc., 292 N.J.Super. 555, 561-62, 679 A.2d 206 (App.Div.1996) (quoting Feiler v. Fort Lee Bd. of Adjustment, 240 N.J.Super. 250, 255, 573 A.2d 175 (App.Div.1990), certif. denied, 127 N.J. 325, 604 A.2d 600 (1991)).
In order to determine whether a municipal governing body has standing to sue regarding the grant of a use variance, a court must consider whether the requested variance would substantially alter the character of the district as set forth in the applicable zoning ordinance. Twp. of Dover, supra, 158 N.J.Super. at 412-13, 386 A.2d 421. To make this determination, as Judge Hurley recognized, the court may take into account factors such as: (1) the size of the tract; (2) the size of the tract relative to the size and character of the district in which it is located and of *324 the municipality as a whole; (3) the number of parcels into which the tract will be subdivided; and (4) the nature and extent of the variation from district regulations that is sought. Id. at 413, 386 A.2d 421.
Ultimately, the court's inquiry must "be one of both geographic and functional substantiality vis-a-vis the plan and scheme of the municipality's zoning ordinance." Ibid. Notably, this "jurisdictional question ... is not only a threshold issue but also a dispositive one," for "if the board is determined to have transcended its variance authority, its action must be reversed for that reason alone." Id. at 414, 386 A.2d 421.
Kaplan contends Judge Hurley erred in failing to apply the analysis set forth in Dover, and in improperly assessing instead whether the application fulfilled the criteria of Medici v. BPR Co., 107 N.J. 1, 18, 526 A.2d 109 (1987). In Kaplan's view, proper application of the Dover analysis would have resulted in a finding that no usurpation of municipal authority had occurred because the property at issue did not comprise a significant portion of the R-2 zone or of the Township as a whole and was not going to be subdivided.
We agree with Kaplan that some of Judge Hurley's discussion appears more appropriately directed at reviewing the proofs relating to the positive "special reasons" criteria under the arbitrary and capricious review standard for a use variance, see Kohl v. Mayor of Fair Lawn, 50 N.J. 268, 276, 234 A.2d 385 (1967), an issue that was not before him. We also agree with Kaplan that it was certainly relevant that the property here was only a small part of the R-2 zone and an even smaller part of the Township itself. The parcel at issue was only about seven percent of the R-2 zone and less than one-half of one percent of the total acreage of the municipality.
As Kaplan pointed out, the published cases in this area reversing the grant of variances have all involved large tracts of land comprising most or all of a particular zone. See Vidal, supra, 292 N.J.Super. at 557-61, 679 A.2d 206 (17.8-acre site comprising entirety of one zone and significant portion of other); cf. Feiler, supra, 240 N.J.Super. at 253-57, 573 A.2d 175 (15.69-acre site encompassing the entire zone). Even in Dover, where we remanded for resolution of the usurpation issue, the tract at issue there comprised eighty-one acres. Twp. of Dover, supra, 158 N.J.Super. at 406, 386 A.2d 421.
Obviously, when the variance pertains to a substantial portion of or an entire zone district, a board's variance begins to closely resemble zoning, which is the exclusive province of the municipality. AMG Assocs. v. Twp. of Springfield, 65 N.J. 101, 109 n. 3, 319 A.2d 705 (1974); see also Chester-brooke Ltd. P'ship v. Planning Bd. of Chester, 237 N.J.Super. 118, 130-32, 567 A.2d 221 (App.Div.) (applicant requested a variance for many lots on a five-hundred-seventy-acre lot subdivision), certif. denied, 118 N.J. 234, 570 A.2d 984 (1989).
Nevertheless, Dover's main focus was on whether a municipality had standing to assert a usurpation claim against a board of adjustment. We did not intend to limit the inquiry in usurpation cases to proofs relating only to the four "broad guidelines" we suggested as relevant inquiries. Twp. of Dover, 158 N.J.Super. at 411, 386 A.2d 421.
The key issue we identified in Dover was whether the requested variance will "substantially alter the character of the district as that character has been prescribed by the zoning ordinance." Id. at 412-13, 386 A.2d 421. The facts in Dover involved "the board's wholesale application of the limiting schedule of one district to a proposed *325 development in another district." Id. at 413, 386 A.2d 421. Such action, even in a relatively small portion of the district, takes on the appearance of de facto rezoning.
When the proofs demonstrate that the grant of a variance substantially alters the municipality's zone plan, a board may be found to have usurped the zoning power with regard to a smaller portion of the pertinent district. In such a case the Board may not act with impunity merely because the parcel does not comprise any particular portion of the district. For example, in Leimann v. Board of Adjustment of Cranford Township, 9 N.J. 336, 88 A.2d 337 (1952), the Court found the board lacked jurisdiction to permit by variance construction of eight garden-type apartment buildings with 140 residential units upon nine and one-half acres in a Residence A zone district limited to single-family dwellings. Id. at 341-42, 88 A.2d 337. Although the Court was concerned with the magnitude of the requested variance, the Court further explained that the board's "power must be exercised consonant with the duty laid upon the local board to protect the integrity of the general scheme from substantial impairment." Id. at 340, 88 A.2d 337.
Similarly, in Victor Recchia Residential Construction, Inc. v. Zoning Board of Adjustment of Cedar Grove, 338 N.J.Super. 242, 768 A.2d 803 (App.Div.2001), the applicant sought a variance for two tracts that were partially in two zones. Id. at 245, 768 A.2d 803. A small portion of one lot was in the residential R-8 zone, and the remainder of the parcel at issue was in the limited industrial M-2 zone. Ibid. The applicant's variance sought permission to create seven separate single-family residential lots pursuant to the R-8 requirements. Ibid. We affirmed the board's denial of the variance because a "grant of a use variance under these circumstances would amount to de facto rezoning of so much of the property in the light industrial zone to an R-8 zone." Id. at 254, 768 A.2d 803; see also Schride Assocs. v. Twp. of Wall, 190 N.J.Super. 589, 594-96, 464 A.2d 1189 (App.Div.1983) (holding that the board of adjustment lacked jurisdiction to grant a variance for a planned unit development without adoption of an ordinance authorizing such a development).
In this case, the ordinance amendment history is particularly damning in that the property had been rezoned by the Township approximately one year[2] before the Board voted to grant Kaplan's requested use variance. Additionally, this rezoning had taken the property out of a transitional zone where multi-family dwellings of up to six units per acre had been permitted. The rezoning of the property into the R-2 district had the express purpose of avoiding excessive density in this predominately residential neighborhood.
The Board's grant of the variance for a proposed building that grossly exceeded the limitations in the R-2 zone significantly altered the Township's zoning plan. When the Board identified the property in its resolution as ideally suited for a transitional use, the Board ignored the fact that the property had relatively recently been rezoned to preclude such usage. The Board's action thus blatantly rejected the Township's zoning plan and improperly arrogated to itself the power to substitute its idea of an appropriate zone plan. Vidal, supra, 292 N.J.Super. at 564, 679 A.2d 206; Feiler, supra, 240 N.J.Super. at 255-56, *326 573 A.2d 175. This was a usurpation of the Township's authority that cannot be condoned and was correctly reversed by Judge Hurley.
Affirmed.
NOTES
[1] Judge Kestin did not participate in oral argument, but has, with the consent of counsel, joined in this opinion. R. 2:13-2(b).
[2] The Township's written Planning Analysis dated the rezoning at 2001, while testimony indicated that the rezoning occurred in 2002.